THE GOVERNOR OF THE STATE OF ILLINOIS, for the use, &c., Pltiff in Error, *v.* EDWARD H. RIDGWAY, et al., Defts in Error.

ERROR TO JEFFERSON.

If a declaration contains one good count, a demurrer to the whole declaration will be overruled, although some of the counts are defective.

A general assignment of a breach of covenant which is sufficient to apprise the defendant on what account he is sued, is admitted.

A breach which seeks to make a party liable for the failure of his principal, acting as clerk, to account for and pay over fines without alleging that the fines were ever paid to or received by the clerk, is insufficient.

A party is not responsible upon his official bond, for failing to do what the law did not require.

The sureties of any officer upon his official bond, conditioned for the faithful performance of the duties of an office, are liable for the performance of all duties imposed upon him, which come within the scope of his office, whether those duties were required by laws enacted prior or subsequent to the execution of the bond.

The sureties of a clerk of the Circuit Court are liable for the failure of their principal to collect and pay into the county treasury all jury and docket fees, which by the use of ordinary diligence could have been collected.

The presumption is, that when a docket fee has been taxed, that it was legally done.

This was an action of debt, upon the official bond of a clerk

of the Circuit Court brought against himself and his sureties, in the Jefferson Circuit Court, which was dismissed upon a general demurrer, heard before Denning, Judge, at the August term, 1849, of the Jefferson Circuit Court. The facts of the case necessary to a full understanding of the opinion are stated in it.

S. BREESE and L. CASEY for Pltffs in Error.

W. B. SCATES and R. WINGATE for Defts in Error.

TRUMBULL, J.    This was an action of debt against Ridgway and his sureties, as clerk of the Circuit Court of Jefferson County, on his official bond.

The condition of the bond is, that the clerk shall " well and truly do and perform all the duties required to be performed by him in all things faithfully as clerk, &c."

The declaration contains two counts, and under the second, a number of distinct breaches are assigned. The Circuit Court. sustained a demurrer to the whole declaration, and that decision is assigned for error.

If a declaration contains one good count, a demurrer to the same will be overruled, although there may be other counts which are defective. That the first count was good we entertain no doubt. It is objected on account of the generality of the breach, which is, that the said Ridgway, while clerk, received the sum of seven hundred dollars as docket fees, jury fees and fines in the several cases determined in the Circuit Court of Jefferson County, while he was clerk thereof, and did not pay over and account for the same.

These allegations were amply sufficient to apprise the defendants on what account they were sued, and it was wholly unnecessary to set forth the names of the parties and the particular cases in which the money was received. This general assignment is sufficient, and is admitted to avoid a cumbersome prolixity upon the record. Hughes *v.* Smith, 5 John., 168.

As this disposes of the case, it would be unnecessary to notice the questions involved in the assignment of breaches under the second count, but for the fact, that the case will have to be remanded and upon the trial those questions will necessarily arise and have to be determined. It becomes necessary, there-

fore, to settle them now. These breaches set forth the cases in which docket and jury fees were taxed, and fines imposed, during the time that Ridgway was clerk, and allege that he failed and neglected to collect and pay over the docket and jury fees into the county treasury, or to account for and pay over the fines to the county commissioners' court or the county treasury. None of these breaches allege that the fees or fines were ever paid to the clerk or came into his hands. As it respects the fines imposed by the Circuit Court, there is no statute making it the duty of the clerk of that Court to account for and pay them over, at all events, it is not his duty unless they are paid to him; of which there is no allegation in the breaches under consideration. Section 192, chap. 30, R. S., requires the clerk at the end of each term to issue execution for every fine which may have been imposed by the Court during the term, and which remains unpaid; and section 171 of the same chapter declares that the fines, when collected, shall be paid into the county treasury, but by whom is not specified. In the absence of any statutory provision directing who shall pay over the money, it becomes the duty of the officer who collects or receives the fine to pay it into the county treasury, or account for and pay it over to the County Commissioners' Court, as required by section 30, chap. 27, R. S. It follows that the breaches which seek to make the defendants liable for the failure of the clerk to account for and pay over fines, without alleging that they were ever paid to or received by him, are insufficient.

In determining as to the liability of the defendants for the failure of the clerk to collect and pay over the docket and jury fees, it will be necessary to look at the laws upon those subjects, in force at the time the bond was executed, and during the time that the declaration charges such failure. The bond bears date November 29th, 1841, and the statute at that time required the docket and jury fees to be paid to the clerk, and that he should pay them over to the treasurer of the county: acts '35–'38. By virtue of other statutes then in force, the clerk was *authorized* to issue process for the collection of these and other fees, and on request of any officer interested he was *required* to issue such process: Revised Laws of 1833, p. 298, sec. 8. It was also made the clerk's duty by section 14 of the same act to issue fee bills in all cases of judgments upon which execution

should issue, whether requested or not. This continued to be the law till September 10th, 1845, when sec. 19, chap. 56 of the Revised Statutes went into force, making it the duty of the clerk to collect and pay into the county treasury the docket and jury fee. Till this act became a law, the clerk was not required to collect those fees, and it is clear that he is not responsible upon his official bond for failing to do, what the law did not require.

Several of the breaches assigned under the second count are, however, for failing to collect and pay over these fees, since it became his special duty to make the collection, and the question arises, whether he and his sureties are liable upon his official bond for a failure to comply with a duty imposed upon him by a law passed subsequently to the date of the bond. This is an important question. It is a well settled principle that the contracts of sureties are to be construed strictly, and that their liabilities are not to be extended by implication, beyond the terms of the obligation they have entered into. If the collection of the docket and jury fees was an entire new duty, not usually appertaining to the office of clerk, which had been imposed upon him subsequent to the date of the bond, and having no connection with his previous duties, there could be no question that his sureties would not be liable for his failure to perform it. Reynolds *v.* Hall, 1 Scam., 35; The People *v.* Moon, 3 Scam., 123.

But such was not the character of the new duty imposed upon the clerk in this instance. The clerk had previously been authorized to collect, and required to receive the docket and jury fees and pay them over to the county treasurer. These sureties undertook that he should faithfully perform all the duties required to be performed by him as clerk; that is, they became responsible for the faithful discharge of all duties properly appertaining to the office, whether those duties were prescribed by law at the time they signed the bond, or should afterwards be imposed upon him.

There was no implied obligation on the part of the State, at the time the bond was entered into, that the laws prescribing the duties of the clerk of the Circuit Court should remain unchanged during his continuance in office, which at that time was for an indefinite period often extending to life. On the contrary,

the sureties, in view of the frequent legislation required, by the everchanging circumstances of the country, must have anticipated that the duties of clerks would be liable to be modified and changed, from time to time, as the public interests might require. They must have entered into the bond with this understanding, and by the very terms of the obligation they bound themselves to the faithful performance, by their principal, of all the duties required to be performed by him in the capacity in which they went his security. The requirement of the law, that the clerk should collect that which was before to be paid to him, and which he was before authorized to collect, was not the imposition of such a new duty, disconnected with any duty previously enjoined upon him, as to discharge his sureties; on the contrary, it was the imposition of a duty entirely consistent and in perfect harmony with what was before required.

In the case of the Bank of Mil. and Brandywine *v.* Wollaston, 3 Harring, 90, it was held, that the sureties of the cashier of the bank were not discharged by an increase of the capital stock of the bank, subsequent to the date of the bond. The Court say, " The sphere of his duties was the same, although the subject matter of his charge might be increased, which is no more than what happens from day to day from fluctuations in the amount of deposits."

It was decided in the case of White *v.* Fox, 22 Maine, 341, which was an action against the clerk of a court and his sureties upon his official bond, that a provision of law enacted subsequent to the date of the bond, by which it was declared in the case of a failure to pay over money for which the clerk was accountable, he should " pay interest thereon at the rate of twenty-five per cent.," did not discharge the sureties. It is said by the Court in that case: " The sureties were bound for the faithful performance of the duties of the office, that is, for the faithful performance of such duties, as the laws for the time being should require to be performed by the clerks of the judicial courts. If the sureties in the official bonds of persons holding offices created by laws, were to be discharged by every change of the laws relating to their duties, it would in these days of ever frequent change be to little purpose to trouble the officers to obtain sureties. There is little of similarity between such cases, and those arising out of offices or trusts, where duties are assigned or regulated by contract."

So in Kentucky it has been held, that a sheriff's bond conditioned that he will execute the duties of his office, extends to duties imposed by statute after the execution of the bond. Bartlett *v.* The Governor, 2 Bibb, 586.

The cases of Portage Co. *v.* Wetmore, 17 Ohio, 330, and of Kindle *v.* The State, 7 Blackf., 586, maintain the same doctrine.

The principle deducible from these cases taken in connection with another class of cases in which it is held, that if the creditor or obligee does any act varying the terms of the obligation the surety is thereby discharged, is this, that the sureties of an officer upon his official bond are liable for the faithful performance of all duties imposed upon such officer, whether by laws enacted previous or subsequent to the execution of the bond, which properly belong to and come within the scope of the particular office, and not for those which have no connection with it, and cannot be presumed to have entered into the contemplation of the parties, at the time the bond was executed.

It is the opinion of the Court, that the defendants are liable for the failure of Ridgway to collect and pay into the county treasury all jury and docket fees, which by the use of ordinary diligence could have been collected, accruing while he was clerk, and subsequent to September 10th, 1845, the time when it was made his duty by law to collect such fees, and that they are not responsible for his failure to collect the jury and docket fees which were taxed prior to that date.

It was objected upon the argument that the declaration should aver that the docket fees claimed were legally taxed, since there are some cases in which no docket fee is allowed by law. This objection is not tenable.

The presumption is when a docket fee has been taxed, that it was legally done. If such was not the fact, it is matter of defence for the defendants to show.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed.*