Andrew H. Shreffler *et al.*

*v.*

John W. Nadelhoffer.

*Filed at Ottawa June 12, 1890.*

1. Arrest of judgment—*one good count.* If a declaration contains one good count, that will be sufficient to sustain a general verdict, even though all the other counts are defective.

2. Same—*motion in arrest after demurrer overruled.* Where a defendant demurs to a declaration, and pleads over after his demurrer is overruled, he will be precluded from insisting upon a motion in arrest of judgment, for insufficiency of the declaration.

3. Defective pleading—*cured after verdict.* Where the statement of the plaintiff's cause of action, and that only, is defective or inaccurate, the defect is cured by a general verdict in his favor, for the reason that, to entitle him to recover, everything, in form or substance, to complete his title so defectively stated, must be proved at the trial, and it is therefore a fair presumption that such proof was made. When no cause of action is stated, the omission is not cured by the verdict.

4. A count upon an appeal bond, seeking to recover damages upon the ground that the plaintiff was prevented by the defendant from

making sale of a promissory note, alleged that he had offers to buy such note : *Held,* that as the count was sufficient to admit proof of the names of the parties with whom the plaintiff had negotiated the sale of the note, and to whom he was prevented from making the sale, it was sufficient after verdict, as it would be presumed that the proof showed a cause of action.

5. INJUNCTION—*damages on dissolution—on appeal.* On appeal to the Appellate Court from an order dissolving an injunction, by which the injunction is continued, that court has no jurisdiction or authority, on affirming the decree of the trial court, to make an award to the party entitled thereto, of his damages growing out of the continuance of the injunction.

6. SURETY—*liability—strict construction.* A surety has the right to stand upon the strict terms of his obligation. His liability is not to be extended, by implication, beyond the terms of the contract, which is to be strictly construed.

7. The rule of strict construction, however, as applied to the contracts of sureties and guarantors, in no way interferes with the use of the ordinary tests by which the actual meaning and intention of contracting parties are ordinarily determined, but merely limits their liability strictly to the terms of their contract, where those terms are ascertained, and forbids any extension of such liability, by implication, beyond the strict letter of the terms employed. The same rules of construction are applicable to contracts of suretyship as to other contracts.

8. CONSTRUCTION OF CONTRACTS—*general rule.* If a contract is susceptible of two interpretations, one of which renders it nugatory, and the other is consistent with and accomplishes the intention of the parties, the latter should be adopted.

9. So the condition of an appeal bond should not receive such a construction as will render any part of it wholly meaningless and nugatory. It must be presumed that the parties intended to enter into an obligation every provision of which would be valid.

10. SAME—*appeal bond construed—as to the measure of damages.* The condition of an appeal bond given by the defendants on an appeal from a decree dismissing a bill and dissolving an injunction, read: "Now, if the said A and B shall duly prosecute said appeal, and shall moreover pay all damages, and damages growing out of the continuance of the injunction herein, costs of suit rendered against them, * * * in case the said decree shall be affirmed, then this obligation to be void," etc.: *Held,* from the circumstances under which the bond was given, and the language used, that the undertaking was to pay all damages growing out of the continuance of the injunction, in case the decree should be affirmed.

11. PRACTICE— *trial without issue made up—waiver.* Where a defendant goes to trial without any answer to one of his pleas, and without moving for judgment thereon, he thereby waives the necessity for a formal issue, and the irregularity will be cured by the verdict.

12. SAME—*dismissal of a count in declaration—effect upon plea thereto.* Where a count in a declaration is dismissed by the plaintiff prior to the trial, such dismissal will carry with it the pleas filed to that count alone, and there will be no necessity to reply to or answer such pleas.

13. ERROR WILL NOT ALWAYS REVERSE—*defenses availed of under other issues.* A judgment will not be reversed because the court may have erroneously sustained a demurrer to certain pleas, the material facts of which were substantially alleged in other pleas, whereby the defendant obtained the advantage of the defenses thereby presented.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This was an action of debt, brought by John W. Nadelhoffer against Andrew Dillman, Andrew H. Shreffler and Henry A. Sanger, upon the following bond:

"Know all men by these presents, that we, Andrew Dillman & Edward R. Knowlton and Andrew H. Shreffler & Henry A. Sanger, of the county of Will and State of Illinois, are held and firmly bound unto John W. Nadelhoffer in the penal sum of ten thousand dollars, for the payment of which, well and truly to be made, we and each of us bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated at Joliet, Ill., this 27th day of June, in the year of our Lord one thousand eight hundred and eighty-five.

"The condition of the above obligation is such, that, whereas, the said John W. Nadelhoffer did, on the 27th day of June, one thousand eight hundred and eighty-five, at a term of the Circuit Court then being holden within and for the county of Will and State of Illinois, obtain a decree against the above bounden Andrew Dillman & Edward R. Knowlton dismissing their certain bill of complaint and for costs of suit, from which

decree the said Andrew Dillman & Edward R. Knowlton have prayed for and obtained an appeal to the Appellate Court of the 2d District of said State:

"Now, if the said Andrew Dillman & Edward R. Knowlton shall duly prosecute said appeal, and shall moreover pay all damages and damages growing out of the continuance of the injunction herein, costs of suit rendered and to be rendered against them, the said Andrew Dillman and Edward R. Knowlton, by said court, in case the said decree shall be affirmed in the said Appellate Court, then the above obligation to be null and void, otherwise to remain in full force and virtue.

ANDREW DILLMAN.          (L. S.)

EDWARD R. KNOWLTON.      (L. S.)

ANDREW H. SHREFFLER.     (L. S.)

HENRY A. SANGER.         (Seal.)"

The facts in relation to the proceeding in which said bond was given are these: On the 6th day of February, 1885, Andrew Dillman and Edward R. Knowlton filed their bill in chancery in the Circuit Court of Will county against John W. Nadelhoffer alleging, among other things, the total failure of the consideration of a certain promissory note for $8000 and interest, executed by Dillman and Knowlton to Nadelhoffer and guaranteed by Calvin Knowlton and Lewis E. Dillman, and praying for an injunction restraining Nadelhoffer from collecting, assigning or transferring said note, and for a decree ordering him to surrender it to the complainants for cancellation. An injunction *pendente lite* was issued and served, and on the 27th day of June, 1885, a demurrer to said bill was sustained, and a decree was entered dissolving the injunction and dismissing the bill at the complainants' costs for want of equity. The complainants thereupon prayed an appeal to the Appellate Court of the Second District, and an appeal was granted by the court, "on condition that said complainants do file their good and sufficient appeal bond, in the penal sum of ten thousand dollars, with Andrew H. Shreffler and Henry A.

Sanger as sureties thereon, conditioned that said complainants shall prosecute said appeal, and shall moreover pay all damages, and damages growing out of the continuance of the injunction herein, costs of suit rendered and to be rendered against them, the said complainants, by said court, in case the said decree shall be affirmed in said Appellate Court." The complainants thereupon presented the bond now in suit as their appeal bond, and the same having been approved it was ordered by the court that the injunction stand and remain in force pending the appeal.

On the 21st day of July, 1885, Edward R. Knowlton died, and the surviving appellant thereupon appeared in the Appellate Court and suggested the death of said Knowlton, and on his motion leave was given him to prosecute the appeal as survivor. On the 20th day of February, 1886, said decree was affirmed by the Appellate Court, and judgment was rendered in favor of Nadelhoffer for his costs in that court. On the 12th day of April, 1886, Nadelhoffer brought suit on said note in the Circuit Court of Will county, against Andrew Dillman, the surviving maker. Said suit was taken by change of venue to Livingston county, and on the 14th day of June, 1887, judgment was rendered therein by the Circuit Court of that county in favor of Nadelhoffer for $9994.76 and costs. On the same day an execution on said judgment was issued to the sheriff of Will county by whom it was afterwards returned wholly unsatisfied. An alias execution issued December 10, 1887, was also returned unsatisfied. On the 2d day of March, 1886, Nadelhoffer presented his claim against the estate of Edward R. Knowlton, deceased, upon said note, to the County Court of Will county and the same was duly allowed, and on final settlement of that estate, Nadelhoffer received, in common with the other creditors, a dividend of eight and one-half per cent, the assets of the estate being thereby exhausted. On the 6th day of March, 1888, Calvin Knowlton, one of the guarantors, died insolvent, his assets not being more than sufficient

to pay the claims having priority over that of Nadelhoffer on the guaranty.

The evidence tends to show that, at the time of the commencement of the injunction suit, the makers and guarantors of said note were all engaged in business in Joliet, and were persons of good credit and financial standing, and that at about the time said suit was commenced, Nadelhoffer, through an agent, had negotiated with certain bankers in Joliet for the sale and transfer to them of said note, and that said bankers had agreed that at any time Nadelhoffer saw fit to bring the note in, they would purchase it of him, with no security additional to that of the parties already liable thereon, and pay him $8500 therefor, but that in consequence of the commencement of the injunction suit and the continuance of the injunction in force, the sale was not consummated. The evidence also tends to show that, during the pendency of said appeal, the surviving maker and the guarantors became insolvent and lost their financial credit, and that at the time the decree was affirmed by the Appellate Court, said note had become entirely unsalable, and that Nadelhoffer has never been able to collect or realize anything thereon, except the small dividend received from the estate of Edward R. Knowlton, deceased.

The declaration, as filed, consisted of five counts, but the plaintiff, before the trial, entered a nolle prosequi as to the third count. The first count, after averring the execution of the bond and its terms, assigns two breaches:

1. That the decree appealed from had been affirmed by the Appellate Court, and that a judgment for costs had been rendered by that court against the appellants, and that such judgment had not been paid.

2. That the bill in the injunction suit was filed by the complainants therein to restrain the plaintiff from selling, transferring or collecting said promissory note; that an injunction was issued as prayed in said bill, and that by reason of said

appeal, said injunction was continued in force; that on the day the appeal bond was filed the plaintiff was the owner of said note, and that both the makers and guarantors were then solvent, and possessed of sufficient real and personal estate out of which said note might have been collected; that by the continuance of said injunction in force, the collection of said note was delayed, to-wit, three years, and that during that time the several parties liable on said note became insolvent, so that no portion of the money due on said note could be collected of them or either of them.

The second count, after setting out the bond, alleges, by way of assigning a breach, that the plaintiff, at the time of the execution of said bond, was the owner of said note; that in the suit in which the bond was given, the plaintiff was enjoined and restrained from selling, transferring or collecting said note, and that by an order of the court that day entered, said injunction was continued in force pending said appeal, that being the continuance of said injunction mentioned in the bond; that at the date of the entry of said order and of the filing of said bond, said promissory note was worth the face value thereof, and that the persons liable thereon had sufficient real and personal property out of which the whole of said note could have been collected; that by reason of the continuance in force of said injunction, the plaintiff was hindered and delayed in transferring or attempting to transfer or sell said note and that during the time of said delay the signers and guarantors of said note, and each of them, lost, conveyed or disposed of their real and personal estate, so that said note became uncollectible and worthless.

The fourth count is substantially like the second.

The fifth count alleges, in substance, that on the 6th day of February, 1885, in a certain cause then pending in the Circuit Court of Will county, in which Andrew Dillman and Edward R. Knowlton were complainants and the said John W. Nadelhoffer was defendant, said Nadelhoffer was, by the order

of said court, enjoined and restrained from selling, transferring or collecting the promissory note in question; that thereafter such proceedings were had in said suit that said Nadelhoffer obtained a decree against said Dillman and Knowlton dissolving said injunction and dismissing the bill of complaint and for costs of suit; that said Dillman and Knowlton prayed and obtained an appeal from said decree to the Appellate Court of the Second District, and that they then and there applied for and obtained an order continuing said injunction pending said appeal; that thereupon the defendants in this suit, (together with said Knowlton who has since died), executed said appeal bond; that such proceedings were had in the matter of said appeal in said Appellate Court, that on the 10th day of February, 1886, the decree of said Circuit Court was affirmed; that said Dillman, the survivor of said Knowlton, thereupon prayed an appeal in said cause from said Appellate Court to this court, and that such proceedings were had in this court in the matter of said appeal, that on the 15th day of May, 1886, the judgment of said Appellate Court was affirmed; that after the decision of the Appellate Court affirming said decree, to-wit, on the 12th day of April, 1886, said Nadelhoffer commenced suit in the Circuit Court of Will county against said Dillman on said note; that said suit was removed to Livingston county by change of venue, and that on the 14th day of June, 1887, said Nadelhoffer recovered judgment in said suit in that court for $9994 and costs of suit, and that on that day an execution was issued on said judgment to the sheriff of Will county, which was by said sheriff afterwards returned wholly unsatisfied; that after the affirmance of said decree by the Appellate Court said Nadelhoffer filed his claim against the estate of Edward R. Knowlton, deceased, in the County Court of Will county, and that said claim was by said court allowed in full, and that upon said claim there has been paid to said Nadelhoffer by the administrators of said estate the sum of $842.86, and that said estate is wholly insolvent, and that

nothing more can be collected therefrom. After the averments aforesaid, said fifth count alleges, by way of assigning a breach of said bond, in substance as follows :

That at the time of granting said injunction, and from thence until the final disposition of said cause by this court, said Nadelhoffer was the owner and holder of said promissory note, and that at the time of granting said injunction and until the order of the Circuit Court continuing the same as aforesaid, said note, with the guaranty thereon, was of great value, to-wit, of the value of $10,000, and that the makers and guarantors of said note were reputed to be men of great wealth and financial standing, and were reputed to be the owners and possessed of property, real and personal, of great value, far exceeding the amount of said note, and that said note, save and except for the continuance of said injunction, could have been negotiated and sold for a large sum of money and property, to-wit, for the sum of $10,000; that said plaintiff was, by divers responsible parties, offered large sums of money and property, to-wit, $10,000, for said note with the guaranty thereon as aforesaid, and was intending to and would have disposed of and sold the same without recourse upon the plaintiff except for the continuance of the injunction as aforesaid; that by reason of the continuance of said injunction, the plaintiff was hindered and delayed for a long time, to-wit, for the period of ten months, from selling, transferring or collecting said note or any part thereof; that during that time the makers and guarantors of said note, and each and all of them, became reputed to be of doubtful solvency and financially irresponsible, and that during said delay Edward R. Knowlton, one of the makers, died insolvent, and that Calvin Knowlton, one of said guarantors, has since died insolvent, and that the other maker and the other guarantor have since the order continuing said injunction become insolvent, and that said note, except as to the sum of $842.86 realized thereon from the estate of said Edward R. Knowlton, now is, and for

a long time past has been, worthless, uncollectible and of no value, and that the plaintiff now is, and for a long time past has, by reason of the premises, been unable to sell and dispose of said note or to collect the same, either from the makers or guarantors, or from their estates or property, and that by reason of the continuance of the injunction and the death of said Edward R. Knowlton, one of the makers, and the changed and impoverished condition of the makers and guarantors of said note since the continuance of the injunction, the said note and guaranty now are, and for a long time past have been wholly worthless, uncollectible and of no value.

The defendants demurred to the second breach alleged in the first count, and also to the second count, and said demurrers being overruled, a large number of pleas were filed to each of the counts, upon which various issues were taken. The cause afterwards came on for trial before the court, a jury being waived, and at such trial the court found the issues for the plaintiff, and found his debt to be $10,000 and assessed his damages at $8500. The defendants thereupon entered their motion for a new trial, and also their motion in arrest of judgment, both of which motions were overruled by the court. Judgment was thereupon rendered in favor of the plaintiff for his said debt and damages, and also for costs, it being ordered that said debt should be fully discharged on payment of said damages.

Said judgment was taken by appeal to the Appellate Court of the Second District and was there affirmed, and defendants now bring the record to this court by a further appeal.

Messrs. GARNSEY & KNOX, Mr. B. OLIN, Mr. GEO. S. HOUSE, and Mr. JOHN N. JEWETT, for the appellants:

The declaration is insufficient, and no recovery could be had under it, and no evidence could be admitted under any count whereby to make a cause of action against these defendants. The judgment should have been arrested. *Culver*

v. *Third Nat. Bank,* 64 Ill. 528; *Hibbard* v. *McKindley,* 28 id. 240.

When the plaintiff sues to recover special damages in regard to the non-completion by third persons of contracts the plaintiff had made with them, the names of such third persons should be stated. *Craft* v. *Brite,* 1 Sam. 243; *Lowe* v. *Harwood,* Jones, 196; *Hartley* v. *Herring,* 8 T. R. 130; 1 Chitty's Pl. 339; 2 Greenleaf on Evidence, sec. 254.

The bond imposed no other obligation upon the sureties than to pay and satisfy whatever judgment might be rendered in the Appellate Court. The contracts of sureties are to be strictly construed. *Ludlow* v. *Simonds,* 2 Caine's Cas. 29; *Dobbin* v. *Bradley,* 17 Wend. 425; *Reynolds* v. *Hall,* 1 Scam. 38; *People* v. *Moon,* 3 id. 126; *Governor* v. *Ridgway,* 12 Ill. 17; *Governor* v. *Lagow,* 43 id. 141; *Cooper* v. *People,* 85 id. 417; *Schnell* v. *Planing Mill,* 89 id. 584; *Trustees* v. *Sheik,* 119 id. 582; *Stull* v. *Hance,* 62 id. 55.

The damages sought to be recovered in this suit must arise from the continuance of the injunction. No such damages can be recovered, as against the sureties on this bond, unless assessed in the Appellate Court, for the statute forbids such recovery. In this case, resort for a recovery, if any, must be had against the sureties on the original injunction bond.

Messrs. HILL & HAVEN, and Messrs. HALEY & O'DONNELL, for the appellee:

The several counts are good after verdict. They also state a good cause of action. Rev. Stat. chap. 7, sec. 6; *Railway Co.* v. *O'Conner,* 115 Ill. 254; *Mechanicsburg* v. *Meredith,* 54 id. 84.

The bond in suit was intended, and by its terms it does secure appellee against all damages caused by a continuance of the injunction.

A surety's contract is to be construed by the same rules as the contract of others. 2 Sutherland on Damages, 588; *Lack-*

v. *McVene*, 33 Mich. 473; *Gates* v. *McGee*, 13 N. Y. 232; *Lee* v. *Dick*, 10 Pet. 482; *Brown* v. *Haven*, 37 Vt. 429; *Reed* v. *Fish*, 59 Me. 358; *Boehme* v. *Murphy*, 46 Mo. 57.

The damages claimed were the natural and proximate cause of the delay caused by the wrongful continuance of the injunction. *Meysenberg* v. *Schlisper*, 48 Mo. 426; *St. Louis* v. *Alexander*, 23 id. 522.

Mr. Justice Bailey delivered the opinion of the Court:

Certain questions arising upon the pleadings are presented by counsel which we will notice first. It is said that the defendants' eighth plea presented a complete defense to the action, and as that plea was unanswered, judgment should have been rendered thereon for the defendants. It appears that the defendants went to trial without objection that said plea was unanswered, and without moving for any judgment thereon for want of a replication. They thereby waived the necessity of a formal issue. As we said in *Strohm* v. *Hayes*, 70 Ill. 41, it is the settled doctrine of this court, that, proceeding to trial where an issue is not made up on one of the pleas, such issue is considered as waived, or the irregularity is cured by verdict. Furthermore, said eighth plea purports to answer only the third count of the declaration, and as that count was dismissed by the plaintiff prior to the trial, such dismissal carried the eighth plea with it, and that plea was no longer in the case, and there was no occasion for answering it.

Again, it is insisted that each of the several counts in the declaration is insufficient to show a cause of action, and that the defendants' motion in arrest of judgment should therefore have been sustained. The alleged defect in the first, second and fourth counts is, that, except as to the first breach assigned in the first count, there is no averment that the decree recited in the appeal bond has ever been affirmed by the Appellate Court. It is difficult to see how, as the record now stands, the defendants can avail themselves of this defect in the second

count, or in the second breach assigned in the first count. Said second breach in the first count and said second count were both demurred to by the defendants, and their demurrer being overruled, they abandoned it, and filed various pleas in bar. The only assignment of error by which the alleged defect in the first and second counts is presented for consideration here, is the one which calls in question the decision of the trial court overruling the defendants' motion in arrest of judgment, and the settled doctrine of this court is, that where a defendant demurs to a declaration, and, after his demurrer is overruled, pleads over, he will be precluded from insisting upon a motion in arrest of judgment for insufficiency in the declaration. *Quincy Coal Co.* v. *Hood,* 77 Ill. 68; *American Express Co.* v. *Pinckney,* 29 id. 392; *Independent Order of Mutual Aid* v. *Paine,* 122 id. 625; *Rouse* v. *County of Peoria,* 2 Gilm. 99; 2 Tidd's Practice, 918.

But we think the fifth count, especially after verdict, is sufficient to sustain the judgment, and that being so, the court properly overruled the motion in arrest of judgment, even though all the other counts may have been defective. Section 57 of the Practice Act provides that: "Whenever an entire verdict shall be given on several counts, the same shall not be set aside or reversed on the ground of any defective count, if one or more of the counts of the declaration be sufficient to sustain the verdict." See also *Gebbie* v. *Mooney,* 121 Ill. 255, and authorities cited. The objection urged to the other counts does not exist in the fifth count, as that count contains a sufficient averment of the affirmance by the Appellate Court of the decree appealed from. But it is claimed that said count is defective in failing to state the names of the parties who had agreed to or were about to purchase said note, and the sale to whom was defeated by the continuance of the injunction.

The allegation of damages in said count is, in substance, that at the time the order continuing the injunction was made,

the note, the sale and transfer of which was restrained, had a market value of $10,000, the makers and guarantors of said note then being men of great wealth and financial standing; that but for the injunction, the note could have been negotiated and sold for that sum, and that the plaintiff was offered that sum for it by divers responsible parties, and would have disposed of and sold it, without recourse, for that sum, if the injunction had not been continued in force; that by reason of the continuance of the injunction, the plaintiff was delayed and hindered in making such disposition of the note for the period of ten months, and that during that period the makers and guarantors of the note became financially irresponsible, whereby the note became worthless.

Without pausing to determine whether, in this case, the rules of good pleading required the plaintiff to state the names of the parties who had offered to purchase said note, or to whom he would have sold it if he had not been prevented from doing so by the continuance of the injunction, the case is one merely of a defective statement of a cause of action, and not one where no cause of action is stated, and the defect is therefore one which is cured by verdict. The rule on this subject, as laid down by Mr. Gould in his Treatise on Pleading, is as follows: "Where the statement of the plaintiff's cause of action, and that only, is defective or inaccurate, the defect is cured by a general verdict in his favor; because, to entitle him to recover, all circumstances necessary, in form or substance, to complete a title so imperfectly stated, must be proved at the trial; and it is therefore a fair presumption that they are proved. But where no cause of action is stated, the omission is not cured by verdict. For, as no right of recovery was necessary to be proved, or could have been legally proved, under such a declaration, there can be no ground for presuming that it was proved at the trial." Gould on Plead. 463. The allegations of said fifth count were clearly sufficient to admit proof of the names of the parties with whom the plaintiff had negotiated the sale

of said note, and to whom he was prevented from making such sale by the continuance of the injunction, and it will therefore be presumed, as was the fact, that such proof was made at the trial.

But the question to which our attention has been chiefly directed, and the one which presents the greatest difficulty, is, whether any breach of the' condition of the bond sued on is shown. The decision of that question must turn wholly upon the construction to be placed upon the language of the condition. That language is as follows: "Now if the said Andrew Dillman and Edward R. Knowlton shall duly prosecute said appeal, and shall moreover pay all damages, and damages growing out of the continuance of the injunction herein, costs of suit rendered and to be rendered against them the said Andrew Dillman and Edward R. Knowlton by said court, in case the said decree shall be affirmed in said Appellate Court, then the obligation to be null and void, otherwise to remain in full force and virtue."

The judgment of the Appellate Court simply affirmed the decree appealed from, and awarded the appellee, the plaintiff, his costs in that court. No judgment for damages was rendered by the Appellate Court against Dillman and Knowlton or the survivor of them, and no such judgment could have been rendered, as that court had no jurisdiction or authority, on affirming the decree, to make an award to the party entitled thereto, of his damages growing out of the continuance of the injunction. It is not disputed that the costs adjudged to the appellee were paid prior to the commencement of the suit on the bond, and there was therefore no breach of the condition of the bond by reason of the non-payment of said costs.

The defendants contend that, by a proper construction of said condition, the phrase, "rendered and to be rendered against them the said Andrew Dillman and Edward R. Knowlton by said court," should be held to apply to and qualify the words, "all damages, and damages growing out of the continuance of

the injunction herein," and therefore that no damages conse-quent upon the taking of the appeal, or growing out of the continuance of the injunction are within the condition, except such as the Appellate Court should award in its judgment. As the Appellate Court had no power to award damages grow-ing out of the continuance of the injunction, this construction manifestly renders that part of the condition wholly meaning-less and nugatory.

Two of the defendants being sureties, their liability must undoubtedly be determined in accordance with the rules of law applicable to that relation. It is a rule universally re-cognized by the courts that a surety has a right to stand upon the strict terms of his obligation, when such terms are ascer-tained. As said by Mr. Justice Story in *Miller* v. *Stewart*, 9 Wheat. 681: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of the contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change of the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. And courts of equity, as well as law, have been in the constant habit of scanning the con-tracts of sureties with considerable strictness."

The rule thus laid down by Mr. Justice Story has been re-peated and adopted by this court in numerous decisions. *Field* v. *Rawlings*, 1 Gilm. 581; *Waters* v. *Simpson*, 2 id. 570; *Rey-nolds* v. *Hall*, 1 Scam. 35; *People* v. *Moon*, 3 id. 123; *Gov-ernor* v. *Ridgway*, 12 Ill. 14; *Ryan* v. *Trustees of Shawneetown*, 14 id. 20; *C. & A. R. R. Co.* v. *Higgins*, 58 id. 128; *Stull* v. *Hance*, 62 id. 52; *People* v. *Tompkins*, 74 id. 482; *Cooper* v. *People*, 85 id. 417; *Mix* v. *Singleton*, 86 id. 194; *Phillips* v. *Singer Manufacturing Co.* 88 id. 305; *Dodgson* v. *Henderson*,

113 id. 360; *Trustees of Schools* v. *Sheik,* 119 id. 579; *Burlington Ins. Co.* v. *Johnson,* 120 id. 622; *Vinyard* v. *Barnes,* 124 id. 346. In many of these cases we have said that the contract of a surety is to be strictly construed, and that his liability is not to be extended by implication, and such has long been the settled law in this State.

It is not meant by this rule, however, that the courts, in endeavoring to ascertain the precise terms of the contract actually made by a surety, may not resort to the same aids, and invoke the same canons of interpretation which apply in case of other contracts. Thus, in *Stull* v. *Hance,* 62 Ill. 52, the rule that in construing contracts and written agreements, the whole context should be considered, and the intention of the parties ascertained from it, was applied to the interpretation of the contract of a surety; and in *Mix* v. *Singleton,* 86 id. 194, where a similar contract was under consideration, the rule that the words used should be construed as ordinarily understood was applied. Indeed, any other mode of interpretation would lead to the absurd result of giving to the same set of words in a contract one force and meaning when the principal is defendant, and a different force and meaning when the suit happens to be brought against the surety or guarantor. The rule of strict construction, as applied to the contracts of sureties and guarantors, in no way interferes with the use of the ordinary tests by which the actual meaning and intention of contracting parties are ordinarily determined, but merely limits their liability strictly to the terms of their contract when those terms are ascertained, and forbids any extension of such liability by implication beyond the strict letter of those terms.

Various decisions in other States may be cited in support of this position. Thus, in *Locke* v. *McVean,* 33 Mich. 473, the court after reviewing many English and American decisions, says: "The view now generally received appears to be, that for the purpose of finding out what the contract is, the same course is to be pursued that the law authorizes to ascertain

what the parties have agreed upon in the case of other mercantile contracts, but when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of principal and surety apply." In *Kastner* v. *Winsterley*, 20 Up. Can. C. P. 101, the court, after reviewing various English authorities, says: "The rule of construction, then, of a contract of this description, is, to construe it as all other contracts, not giving a strict meaning to the words used against the party using them, nor yet as against the party in whose favor they are used, but to collect the real intention of the parties from the terms used in the contract, taking them in their plain, ordinary, and popular sense, unless by the known usage of the trade they have acquired a peculiar sense, and from the surrounding circumstances." .

In *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244, Mr. Chief Justice Church, in discussing the proper interpretation to be put upon a contract of guaranty, says: "In ascertaining the meaning of the language used, the same rules of construction are applicable to contracts of suretyship as to other contracts. When the true signification of the contract is ascertained, the surety or guarantor has a right to insist that his liability shall not be extended beyond its precise terms." In *Belloni* v. *Freeborn*, 63 N. Y. 383, the court, in discussing the same subject, say: "There is no rule exclusively applicable to instruments of suretyship and requiring them to be in all cases interpreted with stringency and critical acumen in favor of the surety and against the creditor, and all ambiguities to be resolved to the advantage of the promisor, and every liability excluded from the operation of the instrument that can, by a strained and refined construction, be deemed outside of the agreement. In guaranties, letters of credit, and other obligations of sureties, the terms used and the language employed are to have a reasonable interpretation, according to the intent of the parties as disclosed by the instrument, read in the light of the surrounding circumstances, and the purposes for which it was

made. If the terms are ambiguous, the ambiguity may be explained by reference to the circumstances surrounding the parties, and by such aids as are allowable in other cases. * * * The surety is not liable on an implied engagement, and his obligation can not be extended, by construction or implication, beyond the precise terms of the instrument by which he has become surety. But in such instruments the meaning of the written language is to be ascertained in the same manner and by the same rules as in other instruments; and when the meaning is ascertained, effect is to be given to it." See also, *Gates* v. *McKee,* 13 N. Y. 232; *Crist* v. *Burlingame,* 62 Barb. 351; Brandt on Suretyship, 105, *et seq.*

It must be conceded that the condition of the bond in question, when read by itself and without reference to surrounding circumstances, is of doubtful meaning. The draftsman, in preparing the bond, instead of drawing two bonds, one to serve as an appeal bond and the other as an injunction bond, took a blank appeal bond, and endeavored, by inserting a clause providing for the payment of the damages growing out of the continuance of the injunction, to make it serve the purposes of both an appeal and an injunction bond. The place in which the last named clause is inserted and its relation to the other words of the condition are such as to render it uncertain, if we consider merely what appears upon the face of the instrument, whether the undertaking is, to pay all damages growing out of the continuance of the injunction, in case the decree is affirmed by the Appellate Court, or merely to pay all such damages arising from that cause as should be awarded against the obligors by the judgment of that court. Either reading may be adopted without doing violence to any of the language of the condition.

But when we view the condition in the light of surrounding circumstances, there can be no reasonable doubt as to which of these meanings was within the purpose and intent of the parties. Of these circumstances we may notice, first, the fact

that the Appellate Court had no jurisdiction, whatever might be the outcome of the appeal, to render judgment against the obligors for the damages resulting from the continuance of the injunction. We must attribute to the obligors the intention to enter into an obligation every provision of which would be valid, but if the condition is interpreted as importing an obligation to pay only such damages as should be adjudged by the Appellate Court, it becomes, so far as that part of it is concerned, merely senseless and nugatory.

Then again, the circumstances under which the appeal was taken and the bond given point to the conclusion that it was the intention of the obligors to secure to the obligee the payment of the damages growing out of the continuance of the injunction, in case the decree should be affirmed. The Circuit Court had rendered its decree dismissing the bill for want of equity and dissolving the injunction. The complainants desired to remove the record to the Appellate Court for review, and to have the injunction continued in force until the final decision of that court. To obtain such continuance of an injunction a party is ordinarily required to execute to the opposite party a bond indemnifying him against all damages which may thereby result to him. This we think the obligors wished and intended and undertook to do, and if the bond is equally susceptible of two interpretations one of which is consistent with and accomplishes that intention, as we think it is, it is very clear that such interpretation must be deemed to be the true one. The undertaking to pay the appellee his damages upon the sole condition that the decree should be affirmed by the Appellate Court must be held to be within the strict terms of the bond as the obligors made it, and not an obligation imported into it by implication or construction.

One of the assignments of error which we have not noticed until now, calls in question the decision of the Circuit Court in sustaining a demurrer to the defendants' second, tenth, twelfth and eighteenth pleas. The second plea is based upon that

interpretation of the bond in question which we have shown is not the true one, and the demurrer to it was therefore properly sustained.

The facts alleged in the tenth and twelfth pleas, so far as they seem to be material, are substantially alleged in other pleas, and the defendants had the advantage of the defenses thereby presented.

The eighteenth plea alleges facts which seem to us to be wholly immaterial, and it was properly held insufficient on demurrer.

We are of the opinion that the judgment of the Appellate Court should be affirmed, and an order to that effect will accordingly be entered.                    *Judgment affirmed.*