# Frank X. Schattgen v. Adolph Holnback.

1. MALICIOUS PROSECUTION—*Malice and Want of Probable Cause a Question for the Jury.*—In actions for malicious prosecution the fact of the existence of malice, and the want of probable cause, are questions for the jury to determine from the evidence.

2. IMPEACHMENT OF WITNESSES—*Proper Form of Examination.*— The proper examination on this subject has been reduced to a formula. well known to experienced lawyers. First, do you know (not state if you know) the general reputation of the party in respect to the particular quality or conduct in question; and then, in case of an affirmative answer, what is that reputation, good or bad.

3. CRIMINAL PROSECUTION—*Sufficiency of the Complaint.*—A complaint in a prosecution for a criminal offense, which states the offense in the language of the statute, is sufficient.

**Memorandum.**—Malicious prosecution. Error to the Circuit Court of Jersey County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

BRIEF FOR PLAINTIFF IN ERROR, J. S. CARR AND H. W. POGUE. ATTORNEYS.

The policy of the law is rather to encourage the prosecution of criminals alleged to be guilty of grave offenses; but if the prosecuting witness is to be mulcted in damages for an honest error in judgment, few prudent men would run the hazard of instituting a criminal prosecution. It is sufficient if there is probable cause, whether the accused is in fact guilty or not. Ames v. Snider, 69 Ill. 377.

BRIEF FOR DEFENDANT IN ERROR, T. F. FERNS AND O. B. HAMILTON, ATTORNEYS.

" The rule for granting a new trial on the ground of excessive damages in actions for malicious prosecution is well settled. To justify the exercise of this power the damages must be flagrant, outrageous and extravagant, evincing intemperance, passion, partiality, or corruption on the part of

the jury." Newell on Malicious Prosecution, p. 545, Sec. 38; Walker v. Martin, 43 Ill. 508; Chapman v. Cawrey, 50 Ill. 512; Montross v. Bradsby, 68 Ill. 185; Hirsch v. Feeney, 83 Ill. 548; Roy v. Goings, 112 Ill. 656.

Where a defendant demurs to a declaration, and after his demurrer is overruled, pleads over, he will be precluded from insisting upon a motion in arrest of judgment for insufficiency of the declaration. Quincy Coal Co. v. Hood, Adm'r, 77 Ill. 68; Independent Order of M. A. v. Paine, 23 App. 171; S. C., 122 Ill. 625; School Directors v. Kimmel, 31 App. 537; Chicago & E. I. R. R. Co. v. Hines, 132 Ill. 161; Shreffler v. Nadelhoffer, 133 Ill. 536; Ambler v. Whipple, 139 Ill. 311.

An action for malicious prosecution will lie for instituting a criminal prosecution on a complaint which does not show an offense committed. Newell on Malicious Prosecution, page 29, § 21, (2), § 22, (1) (2); 2 Greenleaf on Evidence, § 449, (13th Ed.); Bishop on Non Contract Law, § 228; 14 Am. and Eng. Enc. of Law, page 58, notes (2) (3); Shaul v. Brown, 28 Iowa, 37; 4 Am. Rep. 151; Dennis v. Ryan, 65 N. Y. 385; 22 Am. Rep. 635.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Action on the case for malicious prosecution. Verdict for plaintiff for $1,050. New trial and arrest of judgment refused, and judgment entered on the verdict. Defendant prosecutes this writ of error.

The parties were butchers, kept rival meat shops in Jerseyville for many years and were not on friendly terms.

The declaration contained two counts; one on a complaint against plaintiff by defendant before a justice of the peace under section 7 of the criminal code, for selling diseased meat, which was dismissed by the state's attorney, and the other on an information in the County Court, upon affidavit of the defendant, charging plaintiff and George Holnback with unlawfully selling, offering for sale and keeping for sale the flesh of a diseased steer, upon which the defendants

therein were tried by jury and acquitted. A demurrer, general and special, to the whole declaration and to each count thereof, was sustained as to the first, but overruled as to the other. To the plea first filed to the second count a demurrer was also sustained, whereupon the defendant got leave and filed the general issue, upon which the trial was had.

Defendant contested the allegations of malice and the want of probable cause, set up by way of defense; that he had fully and fairly stated to counsel the facts and evidence on which he proceeded and followed their advice and direction in respect to the prosecution, and attempted to impeach the character of plaintiff as a butcher.

These were all questions of fact, upon each of which we think there was evidence clearly sufficient to support the verdict. Unless there was some error on the part of the court, materially contributing to produce that result, it should be held conclusive.

Error was assigned upon the giving and refusal of instructions but was not urged in argument here. Counsel simply say that the two refused instructions asked for the defendant should have been given. They are in effect the same, and their substance was fairly given both in the first for defendant, and sixth for plaintiff.

Those insisted on, relate to the exclusion and admission of evidence offered as to the plaintiff's character and to the ruling on the motion in arrest of judgment.

If it was allowable, under the authority of Israel v. Brooks, 23 Ill. 575, either in mitigation of damages or as "good ground for augmenting a suspicion against him," to prove specific acts of plaintiff in violation of the statute, other than that for which he had been prosecuted, we apprehend the proof must be such as would be competent in a prosecution directly for such act. Therefore the statement of the witness Milem, that Emeline Decker had told him plaintiff bought of Mr. Fall, a cow or steer that was crippled, which was the nearest approach to any such act alluded to in all the testimony, was not evidence. Hearsay is not competent; nor was the purchase of a crippled food-animal, had it been properly proved, necessarily within the statute.

Schattgen v. Holnback.

The only other way of impeaching plaintiff's character that we know of was to prove that his general reputation in the neighborhood where he did business, with reference to offenses substantially like or of the same character with the one in question, was bad.

That section of the statute which defines this offense embraces others also. They all relate to substances intended for food, or to candy or other confection. This offense is defined or described as follows: "Whoever * * * shall sell or offer to sell or keeps for sale any flesh of any diseased animal * * * shall be confined," etc. In the others, which are the adulteration of those substances for the purpose of sale, or the selling, offering or keeping for sale such adulterations, and all of which precede this, the *scienter*, in terms, is clearly included as an essential element. If not in this also, we hold it to be clearly implied. This was admitted by the information here in question by the allegation that the act charged was "unlawfully" committed, as well as "contrary to the form of the statute," etc.

A very large proportion of the questions of defendant as to plaintiff's reputation were excluded, and a like proportion of the answers to such as were not, were stricken out. These questions called for " his reputation." without regard to its extent; or for his reputation or general reputation "as a butcher," without indicating for what—skill, promptness, fairness, or selling diseased meat; or for selling "diseased or *bad* meat;" or "as to the character of stock he killed for sale," without specification or limitation as to that character; or for " *buying* or selling diseased *animals*," without regard to the purpose or *scienter*, or to the buying or selling of the flesh of the animals as distinguished from the animal. Food animals, like others, are subject to diseases that are curable, and a butcher may lawfully buy to cure, or sell to be cured. The buying, selling or slaughtering of diseased animals is not unlawful and may be commendable. What the statute denounces, is the selling, or offering, or keeping for sale, and to be used as food, the flesh of animals diseased when slaughtered. The diseased steer may lawfully be bought or sold for its hide, or the hog for its grease.

The proper examination on this subject has been reduced to a formula well known to experienced lawyers. First, do you know (not state if you know) the general reputation of the party in respect to the particular quality or conduct in question; and then, in case of an affirmative answer, what is that reputation—good or bad? In this case the formula seems to have been avoided with what almost seems like studied pertinacity, and we think the court properly disallowed the questions.

Of the examples presented by counsel in the abstract and brief for plaintiff in error, pp. 83-7, which are all that are presented, there is but one that is not objectionable for one or another of the reasons here indicated, and that one was not objected to. But the answer to the second question—was it good or bad?—was, "I have heard rumors to that effect;" which the court properly ordered to be stricken out. Upon further examination that witness (McReynolds) was asked, " What effect? Is that reputation good or bad? " And answered, " Well, I would not consider it first-class." On cross-examination he said : " I don't know that I can tell a person from whom I heard it. What was said was more of his selling a poor quality of meat. It pertained more to that; it was the character of the beef killed generally." Both of these answers are in the record, and together were about all that was shown as to his reputation for selling " diseased " meat. The other witnesses said it was for selling " bad meat "—evidently referring to its quality as poor, tough or the like, but not meaning that it was flesh of a diseased animal. Such testimony was properly stricken out.

Against the little impeaching evidence introduced, the plaintiff rebutting, called quite a number of prominent citizens of Jerseyville who had known him for many years and never heard a word unfavorable to his reputation in the respect in question. On this point plaintiff in error has no substantial ground for complaint of the court or jury.

It is said that neither the affidavit nor the information based upon it set forth any offense, and hence there was no case of which the County Court could take jurisdiction; that

upon that information there could be no valid prosecution, malicious or other, and therefore the count upon those proceedings set forth no legal cause of action. Upon that proposition it is claimed that the motion in arrest of judgment should have been sustained.

The language employed in the affidavit and information to describe the supposed offense, is precisely that used for the same purpose in the statute, except that the act there described is alleged to have been committed "unlawfully" —which certainly does not impair its legal effect; and the same code declares that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of the statutes creating the offense." R. S., Ch. 38, Div. 11, Sec. 6. Nothing more can be required of an information by the state's attorney.

Without conceding the insufficiency of the information, we observe that the defendant is precluded from insisting on a motion in arrest, because he first demurred, and after it was overruled, pleaded the general issue. This rule is well settled. Quincy Coal Co. v. Hood, 77 Ill. 68; I. O. of M. A. v. Paine, 122 Ill. 625; C. & I. R. R. Co. v. Hines, 132 Ill. 161 (overruling the *dictum* in Stevens v. Cope in 109 Ill. 346); Schreffler v. Nadelhoffer, 133 Ill. 536.

There was evidence strongly tending to show actual malice in the criminal prosecution on the part of the plaintiff in error, and the actual damage shown was sufficient, in view of that fact, to warrant the amount assessed. Judgment affirmed.