Leah Passman, Appellant, v. Nathan Budnizky and Joe Horwitz, Appellees.

Gen. No. 38,298.

534

filed April 7, 1936.

RUBENSTEIN, HAGGENJOS & MONARCH, of Chicago, for appellant; WALTER MONARCH, of counsel.

SHAFFER & FREEDMAN, of Chicago, for appellees; ABRAHAM MILLER, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sued defendants as indorsers on a promissory note for $1,250, secured by a purchase money junior mortgage on real estate. The cause was tried by the court without a jury, resulting in a judgment for defendants, from which plaintiff prosecutes this appeal.

The cause was tried upon the following stipulated facts:

"1. On June 1st, 1928, ISADORE SCHWARTZ and LENA SCHWARTZ, his wife, executed and delivered to defend-

ants their principal promissory note in the sum of TWELVE HUNDRED FIFTY ($1,250.00) DOLLARS, secured by a certain purchase money junior mortgage or trust deed recorded in the Recorder's Office of Cook County, Illinois, as Document No. 10043529, subject to a first mortgage encumbrance recorded as Document No. 8989377, securing an indebtedness of SEVEN THOUSAND ($7,000.00) DOLLARS. Maturing July 29, 1930.

"2. That NATHAN BUDNIZKY and JOE HORWITZ, the defendants herein, thereafter endorsed said note and negotiated the same before maturity, for good and valuable considerations to them in hand paid.

"3. That on or about August 28, 1930, said first mortgage trust deed, recorded as Document No. 8989377, securing an indebtedness of $7,000, hereinabove described, was released of record, and one FLORENCE REUSS then and there executed a subordination of lien, wherein and whereby it is recited that she is the legal holder and owner of the indebtedness secured by trust deed recorded as Document No. 10043529, and that by said instrument of subordination it is recited that the lien of the trust deed recorded as Document No. 10043529, which was given to secure the note dated June 1st, 1928, was made subordinate and inferior to that certain trust deed recorded as Document No. 10718003, dated July 24, 1930, being a new first mortgage incumbrance, securing an indebtedness of SIX THOUSAND ($6,000.00) DOLLARS. Maturing July 24, 1935.

"4. That the subordination of said lien was endorsed on the reverse side of the note attached to plaintiff's statement of claim, and that said subordination was without the knowledge or consent of the defendants herein, NATHAN BUDNIZKY and JOE HORWITZ, endorsers.

"5. That proper statutory notice of dishonor was given defendants to charge them as endorsers." By

the same stipulation the parties have agreed that the controverted question of law presented by the foregoing facts is as follows:

"Does the subordination of the lien without the consent of the endorsers on the note dated June 1st, 1928, attached to the plaintiff's statement of claim, release the endorsers, it having been made without their knowledge or consent, or do said endorsers still remain liable on said instrument."

Plaintiff advances two grounds for reversal of the judgment in favor of defendants:

(1) The Negotiable Instruments Law is exclusive in its scope in determining the manner of discharge of parties secondarily liable upon a promissory note, and

(2) A surety on a secured obligation is not discharged by reason of any act of the creditor affecting the security only, unless he has been prejudiced thereby, and then he is discharged only to the extent to which he shows he has been injured.

In support of the first contention plaintiff relies on the Negotiable Instruments Act (ch. 98, ¶ 141, sec. 119, Cahill's Ill. Rev. St. 1933), which prescribes the manner in which a person secondarily liable on a negotiable instrument may be discharged. It is argued that the several grounds enumerated in the act exclude all other grounds, and that since none of the grounds mentioned operates as a discharge of defendants, they remained liable as indorsers. *Fleming v. Gannon,* 267 Ill. App. 163, is cited as being a case precisely in point. Action was there brought by plaintiff against several defendants to recover some $6,000 in interest on certain real estate bonds executed by the defendants. The bonds were part of a $50,000 issue, payable to bearer, executed by the defendants and secured by their trust deed to Cosmopolitan State Bank as trustee, conveying real estate. The trust deed provided that if the time of payment of bonds be extended by

the holder thereof for any time the grantors should be held thereby to consent to such extension and should, notwithstanding the extension, continue liable on the bonds to the holder thereof and for the payment of same at the time mentioned in the extension agreement. On the face of each bond appeared the following:

"The liability of the undersigned hereon shall, under all circumstances whatsoever, continue in its original form until the principal and interest are paid in full." Subsequently, defendants conveyed their interest in the real estate to persons who agreed to pay the bonded indebtedness. Upon maturity the bonds were paid by the trustee bank and sold by it without notice to or consent of the defendants to a trust company which agreed to subordinate the lien of the bonds to the lien of others secured by the same trust deed. Through further transfers plaintiff finally acquired possession of the bonds. Defendants were held liable. The court cited the Negotiable Instruments Act relied on by plaintiff herein, specifying the manner in which persons primarily liable may be discharged and the several ways in which a person secondarily liable may be discharged, and concluded that there was nothing done with the bonds and interest coupons after they had been subordinated which caused the defendants to be released from the payment thereof. It is evident, however, that the provision hereinabove quoted, fixing the liability of defendants "under all circumstances whatsoever . . . until the principal and interest are paid in full" was the basis for the court's conclusion, and any statements in the case with reference to the discharge of persons secondarily liable were, in view of the express provisions of the trust deed, not applicable to the facts therein and merely dicta. The note in the instant proceeding contains no such provision.

The note sued on herein was dated June 1, 1928, and payable on or before June 1, 1931. It was secured by a purchase money junior mortgage on real estate, and was subject to a first mortgage maturing July 29, 1930. When defendants indorsed and delivered the note to the holder thereof they had a right to expect that when the first mortgage became due it would be paid and released. In that event the junior mortgage securing their note would then become a first mortgage lien on the property, and would presumably be ample security for the payment of the note. It may be assumed from the stipulation of the parties that the first mortgage was paid at maturity, because it was released of record on August 28, 1930. The junior mortgage then became a first lien on the real estate, and the holder of the note had no right to do anything which would impair or reduce the value of the security or increase the risk of the indorsers. However, by subordination agreement the holder of the note in effect exchanged a first mortgage security for a second mortgage security of doubtful or no value, under existing real estate conditions. It is well settled law that where the holder of a note secured by a mortgage impairs the security he holds, without the knowledge or consent of the indorser, it operates as a discharge of the indorser from further liability. The rule is thus stated in 8 Corpus Juris 377, section 558:

"The indorser is not liable, however, where his rights have been prejudiced by dealings between the holder and the maker, or by the acts of the holder, and he is discharged, under certain circumstances, by an extension of time for payment granted by the holder to a prior party."

In 8 Corpus Juris 620, sec. 861, it is said:

"Indorsers are released if the security is impaired by the act or negligence of the holder to the injury of the surety or indorser, as where there is an im-

proper sale of collateral or an improper appropriation of the proceeds by the holder. So it has been held that an indorser or surety on a note may be discharged by the holder's failure to record a mortgage given to secure the note, whereby the benefit of the mortgage security is lost, except where the filing was, by agreement, not to be made until necessary.''

The facts in *Rogers v. School Trustees*, 46 Ill. 428, are strikingly similar to the case at bar. In that case the holder of a note secured by a first mortgage permitted the same to become a second lien on the property. Judgment was entered against the sureties, but reversed by the Supreme Court, which said (p. 433):

''It appears that the lands embraced in the mortgages were amply sufficient in value to have more than discharged the indebtedness. They were also the first and superior liens on the land, the subsequent creditors having procured their mortgages subject to this incumbrance. It also appears that Price, the principal in the new note, had become insolvent, and the debt, if paid, would have to be by the other parties to the note. That appellant is, therefore, injured, there can seem to be no doubt.

''Had there been no release of these mortgages, the sureties, upon paying voluntarily, or being compelled to pay the debt, would have been subrogated to the rights of the creditor, and could have enforced the lien in equity, and had the money, thus paid, refunded to them. But by their satisfaction and the release of the lien, other innocent parties have acquired rights that operate to cut off their remedy against the land; and to this the sureties never gave their assent, nor do we see that they have ever ratified the action of the township treasurer. In this they have been deprived of important rights.''

In placing reliance upon the provisions of the Negotiable Instruments Act, plaintiff treats this instrument

as an ordinary promissory note. It was, however, more than that, for it was secured by a purchase money junior mortgage and involved, not only the personal liability of the maker but also the collateral security, being a real estate mortgage. In that situation, it was the duty of the holder to use due care with reference to the collateral so as not to prejudice the rights of the indorsers or deprive them of their right to subrogation. Such rights are not provided for by the Negotiable Instruments Act, but rather are governed by the law in force prior to the adoption of the act.

In 8 Corpus Juris 612, sec. 850, it is said:

"Independent of statute, a person secondarily liable on a bill or a note is discharged by any act which discharges a surety under the general rules governing the relationship of principal and surety." This rule of law is approved in *Prudential Ins. Co. v. Bass,* 357 Ill. 72, where it was stated (pp. 77, 78):

"Section 119 provides for the discharge of persons secondarily liable, but the act makes no provision for the discharge of anyone primarily liable on an instrument other than such as may result from the discharge of the instrument itself as provided in section 118. Section 195 of the act provides: 'In any case not provided for in this act, the rules of the law merchant shall govern.' There is no specific provision in the statute dealing with the precise question here presented, therefore section 195 applies, and we are remitted to its provisions. In other words, the case is governed by the law as it existed before the passage of the Negotiable Instruments act. *Isaac v. Van Hoose,* 171 La. 676; *Jefferson County Bank v. Erickson,* 188 Minn. 345."

When the subordination agreement was made between the parties, converting the first mortgage to a second mortgage, real estate values had become mate-

rially affected by the depression, and second mortgages had practically no value whatsoever. By subordinating the first mortgage security, the holder of the note practically destroyed whatever security defendants then had. By the stipulation of the parties it is admitted that the makers of the note did not pay the same, and we may assume that they were not able to make payment. This left defendants without recourse to the makers and without any security. The resulting damage sustained by them is obvious. Where the rights of a surety have been materially prejudiced it is not necessary for him to show that he had been injured in order to be discharged from liability. (*Cohen v. Rossmoore,* 225 N. Y. App. Div. 300.) In *Shreffler v. Nadelhoffer,* 133 Ill. 536, it was held to be a rule universally recognized by the courts that "a surety has a right to stand on the strict terms of his obligation, when such terms are ascertained." Quoting from an opinion by Mr. Justice Story in *Miller v. Stewart,* 9 Wheat. 681, the court said:

" 'It is not sufficient that he may sustain no injury by a change of the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. And courts of equity, as well as law, have been in the constant habit of scanning the contracts of sureties with considerable strictness.'

"The rule laid down by Mr. Justice Story has been repeated and adopted by this court in numerous decisions. *Field v. Rawlings,* 1 Gilm. 581; *Waters v. Simpson,* 2 id. 570; *Reynolds v. Hall,* 1 Scam. 35; *People v. Moon,* 3 id. 123; *Governor v. Ridgeway,* 12 Ill. 14; *Ryan v. Trustees of Shawneetown,* 14 id. 20; *C. & A. R. R. Co. v. Higgins,* 58 id. 128; *Stull v. Hance,* 62 id. 52; *People v. Tompkins,* 74 id. 482; *Cooper v. People,* 85 id. 417; *Mix v. Singleton,* 86 id. 194; *Phillips v.*

542

*Singer Mfg. Co.,* 88 id. 305; *Dodgson v. Henderson,* 113 id. 360; *Trustees of Schools v. Sheik,* 119 id. 579; *Burlington Ins. Co. v. Johnson,* 120 id. 622; *Vinyard v. Barnes,* 124 id. 346. In many of these cases we have said that the contract of a surety is to be strictly construed, and that his liability is not to be extended by implication, and such has long been the settled law in this State."

We think that what we have said disposes of plaintiff's second contention, namely, that "a surety on a secured obligation is not discharged by reason of any act of the creditor unless he has been prejudiced thereby and then only to the extent to which he shows he has been injured."

Holding as we do that the liability of defendants herein is governed by the law of suretyship rather than by the statute, because the note was secured by a mortgage which involved the question of preserving the security for the benefit of the indorsers and their right of subrogation thereto, and that their rights were materially affected by the destruction of the security, we conclude that the court properly discharged defendants from liability on the note. The stipulated facts sufficiently show that they were prejudiced, and proof of the exact extent of their injury was not necessary under the circumstances shown by the facts in this case.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.