CORNELIUS R. FIELD *et al.*

*v.*

ISAAC V. BROKAW *et al.*

*Filed at Ottawa October 26, 1893.*

1. MORTGAGE—*by husband and wife—not material who was the original debtor.* Where a mortgage given by a husband and wife on her land to secure an account for goods sold to one or both of them, there being no note given for the amount, recited that the indebtedness secured was that of the husband, and that he had agreed to pay the same, it was *held*, that it was immaterial whether the debt originally was that of the husband or the wife, as it was made the debt of the former by the mortgage, and that the validity of the mortgage did not depend upon the fact who was the original debtor.

2. SAME—*foreclosure without the production of a note or bond.* Where a mortgage given by a husband and wife recites an indebtedness of the

former upon a book account, without any reference to a bond or promissory note as evidence of the indebtedness, it will be inferred, in the absence of sufficient evidence to the contrary, that no bond or note was given, and on bill to foreclose the mortgage a decree of foreclosure may be properly entered, without an order requiring the production of a bond or note. If the execution of a bond is not proved, a decree of sale may be entered without requiring its production.

3. LIMITATION—*mortgage securing a book account—written evidence of indebtedness.* Where a mortgage given to secure an open book account recites, and by such recital admits, the indebtedness, its character and amount, and also recites an express promise of the mortgagor to pay the same, such recitals and admissions constitute, of themselves, written evidence of the indebtedness, so as to bring an action for its recovery within the limitation of ten years, as provided in section 16 of the Limitation law.

4. SAME—*when statute begins to run against foreclosure.* Although a mortgage may contain a power of sale in case of default in the payment of the money secured, or any part thereof, or of the interest, or any part thereof, according to the terms and effect of the agreement recited in the mortgage, yet if there is no provision in it in relation to a foreclosure by suit in case of such default, or declaring or giving the mortgagee power to declare the principal due in case of default in the payment of interest, the Statute of Limitations will not commence to run, as against the principal indebtedness, until it becomes due by the terms of the mortgage, and not from the time of default in the payment of an installment of interest.

5. SURETIES—*statute relating to—whether retroactive.* Section 3 of chapter 132, passed in 1874, which provides that when the principal maker in any note, etc., shall die, if the creditor shall not, within two years after the grant of letters of administration, present the same to the proper court for allowance, the sureties thereon shall be released from the payment thereof to the extent the same might have been collected of such estate if presented in proper time, is not retroactive, and does not apply to a mortgage given in 1872.

6. SAME—*release—reducing rate of interest.* The change in a contract between a creditor and the principal debtor, whereby the rate of interest is reduced, will not affect the liability of the surety, where such change is made by his express solicitation.

7. SAME—*release by extension of time of payment.* Merely allowing a mortgage or other debt to run from year to year, and receiving payment of the interest, is not sufficient to discharge a surety. To have that effect there must be a valid and binding agreement for the extension for a definite period, entered into upon a valuable consideration.

8. Trusts and trustees—*trustee's interest in trust estate.* Where land is conveyed to a trustee in trust for a married woman, to grant, bargain, sell and dispose of the same as the *cestui que trust* might order and direct, and she, with the *cestui que trust* and her husband, made a mortgage on the property to secure a debt of her husband, the trustee will hold the mere naked legal title, and he will have no claim or title which he can assert for himself, and any rights of the mortgagee binding on the *cestui que trust* will also bind him.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

Mr. Henry W. Magee, and Mr. Elmer W. Adkinson, for the appellants:

An ordinary mortgage or deed of trust is not an evidence of indebtedness. Before a right to purchase accrues, the mortgage must contain a covenant to pay. *Schifferstein* v. *Allison,* 123 Ill. 662; *McMillan* v. *McCormick,* 117 id. 85; *Scott* v. *Field,* 7 Watts, 361.

The bond, with the mortgage, not having been produced or its absence accounted for, no foreclosure could be had. *Ryan* v. *Dunlap,* 17 Ill. 40; *Moore* v. *Titman,* 35 id. 314; *Lucas* v. *Harris,* 20 id. 165.

No action will lie on the proviso or condition of a mortgage. *Smith* v. *Steward,* 6 Blackf. 162; *Drummond* v. *Richards,* 2 Munf. 337.

If a mortgage is given to secure an unadjusted account, the burden is on the holder to produce accounts and prove what is due. 1 Jones on Mortgages, 346; *DeMoth* v. *Benson,* 4 Edw. Ch. 297.

The debt itself, as shown, appears to have been an open account for goods sold on four months' time, on several dates, and, as against Harriet M. Harvey, is barred by section 15 of the Limitation act. *Price* v. *McClellan,* 93 Ill. 247; *Quayle* v. *Guild,* 91 id. 390.

Courts of equity follow the law in allowing the defense of the Statute of Limitations. *Harris* v. *Mills,* 28 Ill. 44.

What will defeat an action on the debt will defeat a foreclosure. *Emory* v. *Keighan,* 88 Ill. 486; 94 id. 545; *Harris* v. *Mills,* 28 id. 44; *Hagan* v. *Parsons,* 67 id. 170; *Brown* v. *Devine,* 61 id. 260; *Medley* v. *Elliott,* 62 id. 532; *Pollock* v. *Maison,* 41 id. 519; *Insurance Co.* v. *White,* 106 id. 67; *Rue* v. *Dole,* 107 id. 275; *Schifferstein* v. *Allison,* 123 id. 665; *Bullock* v. *Battenhousen,* 108 id. 28; Wood on Lim. 452, 47.

The Statute of Limitations began to run from the first default in the payment of interest. *Kallenbach* v. *Dickinson,* 100 Ill. 437.

Whenever the maker of any instrument in writing shall die, if the creditor shall not present his claim for allowance in the proper court, the sureties shall be released to the extent that the claim might have been collected of the estate. Rev. Stat. chap. 122, sec. 3; *Templeton* v. *Horne,* 82 Ill. 491.

The settled law is, that unless the statute bars a right already accrued, without giving time in which to bring the action, it pertains to the remedy, and is valid. 5 Field's Brief, sec. 441; *McCagg* v. *Heacock,* 42 Ill. 153; *Beesley* v. *Spencer,* 25 id. 216; *Smith* v. *Bryan,* 34 id. 364; *Bigelow* v. *Bemis,* 2 Allen, 496.

When property is mortgaged or pledged for the debt of another, such property occupies the position of a surety or guarantor, and anything which would discharge an individual surety who was personally liable, will, under similar circumstances, discharge such property. *White* v. *Ault,* 19 Ga. 551; *Niemcewitz* v. *Cahn,* 3 Paige, 623; 11 Wend. 312; *Leffinwell* v. *Freyen,* 22 Wis. 392; *Spear* v. *Ward,* 20 Cal. 659; *Dennison* v. *Gibson,* 24 Mich. 187.

A surety is released by extending the time of payment. *Bank* v. *Pierce,* 99 Ill. 272; *Warner* v. *Campbell,* 26 id. 286; *Crossman* v. *Wohlleben,* 90 id. 539; *Meyers* v. *Bank,* 78 id. 257.

And this is so whether or not it is advantageous to the surety. *Ryan* v. *Trustees*, 14 Ill. 20; *Mix* v. *Singleton*, 86 id. 194; *Calvert* v. *Dock Co.* 2 Keen, 644; *Brag* v. *Shain*, 49 Cal. 131; *Bank* v. *Cole*, 39 Me. 188; *Rowan* v. *Rifle Manf. Co.* 33 Conn. 23; *Bacon* v. *Cheaney*, 1 Stark. 192; *Bonser* v. *Cox*, 4 Beav. 379.

A reduction of the rate of interest discharges the surety. *Bethune* v. *Dozier*, 10 Ga. 235; *Mackey* v. *Dodge*, 5 Ala. 388; *Miller* v. *Stewart*, 4 Wash. C. C. 26.

The doctrine that a surety is discharged by dealings between the creditor and debtor inconsistent with the rights of the surety, has been applied. *Calvo* v. *Davies*, 73 N. Y. 216.

The acceptance of the reduced amount by the creditor evidences the change in the contract. *Bethune* v. *Dozier*, 10 Ga. 235.

Payment, if in ignorance of discharge and after release by operation of law, does not revive original obligation. *Tipton* v. *Carrigan*, 10 Ill. App. 318; *Brockman* v. *Sieverling*, 6 id. 512; *Benedict* v. *Miner*, 58 Ill. 20; *Kallenbach* v. *Dickinson*, 100 id. 427; *Welch* v. *Seymour*, 28 Conn. 387.

A change of contract being established, the burden of proving the surety had full knowledge of the acts which released him as surety, is upon the creditor. *Gamage* v. *Hutchins*, 23 Me. 565; 28 Conn. 387.

Mr. Thomas Dent, for the appellees:

The payment of interest by Mrs. Harvey was a sufficient admission of the mortgage indebtedness. *Willey* v. *State*, 105 Ind. 453; *Schifferstein* v. *Allison*, 123 Ill. 662; *Blackburn* v. *Weer*, 21 Ill. App. 37; *McClurg* v. *Howard*, 45 Mo. 378.

The statute of 1874 has no application to a contract made before its passage. Const. sec. 14, art. 2; *Curry* v. *Mack*, 90 Ill. 606; *Bronsen* v. *Kinzie*, 1 How. 341; *McCracken* v. *Hayward*, 2 id. 608; *House* v. *Trustees*, 83 Ill. 368; *Huddleston* v. *Francis*, 124 id. 195.

The conveyance to Field, as a trustee of Mrs. Harvey, was upon a simple trust, imposing upon him no active duty, and his pretense, by a cross-bill recently filed, that because the mortgage was given for certain bills of goods which were charged to Mrs. Harvey, but for which Mr. Harvey covenanted to make payment, entitled him to relief, is without any equity. The mortgage would be binding for a debt either of Mr. or Mrs. Harvey. *Edwards* v. *Schoeneman*, 104 Ill. 278.

Her right of control over the property may be seen by observing the expression of the trust. *Witham* v. *Brooner*, 63 Ill. 344.

The cross-bill of Field could give him no right not secured by answer, but would rather require him to do equity as a condition to being heard at all.

This mortgage was itself evidence of the indebtedness, and so complete that an action for such indebtedness could have been maintained thereon against said James M. Harvey, if he had been living. 1 Jones on Mortgages, secs. 677, 1225.

This is a case in which no note accompanied the mortgage. But it was not necessary "that there should be any personal liability for the payment of the debt." 1 Jones on Mortgages, sec. 70.

A debt or mortgage is valid without any note or bond, although it purports to secure a note or bond, and substantially describes it. A debt exists independently of the note. The inquiry is, does the debt exist? If it does, it is not essential that there should be any evidence of it beyond that furnished by the recitals of the deed. 1 Jones on Mortgages, sec. 353.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Isaac V. Brokaw and William Brokaw, to foreclose a mortgage upon certain real estate in Cook county, executed to them by Cornelius R. Field, Harriet M. Harvey and James M. Harvey, her husband. The legal title to the mortgaged premises stood in the name

of Cornelius R. Field, it having been conveyed to him in fee, December 29, 1867, as trustee of Harriet M. Harvey, in trust to grant, bargain, sell or otherwise dispose of the same, in all respects, as the beneficiary of the trust should order and direct.

The mortgage sought to be foreclosed was executed December 27, 1872. It appears that for some time prior to that date, James M. Harvey had been engaged in business as a clothing merchant in the city of Chicago, and had been purchasing goods on credit, to a considerable extent, from the complainants, who were then doing business in the city of New York as copartners, under the firm name of Brokaw Brothers. While James M. Harvey seems to have been the real owner of the business, the goods, for some reason not fully explained, for a considerable time prior to the date of the mortgage, and for some time thereafter, were billed to Mrs. Harvey, and were charged to her account on Brokaw Brothers' books. Whether she had anything more than a nominal interest in the business does not distinctly appear, although the fair inference from all the evidence would seem to be, that her husband was the real purchaser of the goods and the real debtor for their price. Mrs. Harvey appears, however, both then and afterwards to have been actively concerned in the management of the business.

In February, 1872, both Mr. and Mrs. Harvey were in the city of New York, and they there arranged for a credit with Brokaw Brothers, and for the purpose of furnishing security for the indebtedness which should be thereby incurred, they entered into an agreement in writing, under their hands and seals, dated February 29, 1872, the substantial portions of such agreement being as follows :

"Whereas, James M. Harvey and Harriet M. Harvey, his wife, of the city of Chicago, Ill., are desirous to furnish security for any and all goods that they have or may hereafter purchase of Isaac V. Brokaw and William Brokaw, composing the

firm of Brokaw Brothers, of the city and county of New York, do hereby make the following declaration, viz.:

"That the said Harriet M. Harvey is the owner in fee of a certain house and five acres of land in the town of Hyde Park, South Chicago, on the west side of Packston avenue, between 73d and 74th streets, which said premises are free and clear of all incumbrances of every nature and kind, except taxes for the present year, the said property being valued at the sum of fifteen thousand dollars:

"That, immediately on our return to Chicago, (within a few days), we do hereby promise and agree that a mortgage deed, or deed of trust, shall be made of said property, to the said Isaac V. Brokaw and William Brokaw, conditioned for the payment of the sum of ten thousand dollars, or such part thereof as may at any time be owing to the said Isaac V. Brokaw and William Brokaw, by us, or either of us."

In pursuance of this agreement, James M. Harvey executed his bond to Brokaw Brothers, in the penal sum of $10,000, bearing date March 12, 1872, conditioned for the payment to the obligees of the amounts then due or that might therafter become due to them for goods sold and delivered to the obligor, at the time and according to the terms specified in such sales; and to secure such bond, Cornelius R. Field, the trustee, and Harriet M. Harvey and James M. Harvey, joined in the execution of a mortgage to Brokaw Brothers on the premises mentioned in the agreement.

These instruments were afterwards submitted by Brokaw Brothers to their counsel in New York, and he advised them that they did not fully carry out the intention of the parties as expressed in the agreement of February 29, 1872, the objection, according to his construction of them, being, that they did not constitute continuing securities, but were being constantly paid off and discharged by such payments as the debtors were from time to time making upon their indebtedness, and he recommended the cancellation of that mortgage and the taking

of a new one securing a certain sum, made up of specific bills or purchases of a date prior to the date of the new mortgage, with an agreement that all payments afterwards made should be credited on other accounts or purchases. He also wrote to Mr. and Mrs. Harvey's legal adviser in Chicago, stating fully his objections to the existing bond and mortgage, and suggesting the execution of a new mortgage in the form just stated.

As a result of this advice and correspondence, the mortgage now sought to be foreclosed was executed. That mortgage, as has already been stated, was executed by the same parties, viz., Field, the trustee, and by Mrs. and Mr. Harvey. No bond seems to have been executed with it, but the mortgage itself recited that James M. Harvey was indebted to Brokaw Brothers in the sum of $10,032.65, for merchandise sold and delivered by them to him, stating specifically the dates and amounts of fifteen different sales, aggregating that amount, the date of the first item being September 24, 1872, and of the last October 31, 1872. It was further recited that James M. Harvey had agreed to pay the indebtedness thus scheduled on or before three years from the date of the mortgage, with semi-annual interest at the rate of seven per cent per annum, payable on the 27th day of June and December of each year, until the principal sum should be fully paid, interest to be computed only from the expiration of four months after the dates of the respective sales. The mortgage then provided that the mortgagors, "for the better securing the payment of the money aforesaid, with interest thereon, according to the tenor and effect of the agreement aforesaid, and also in consideration of the sum of one dollar to them in hand paid by the parties of the second part, at the delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold," etc., describing the same premises conveyed by the former mortgage.

Concurrently with the execution of the mortgage, Cornelius R. Field, trustee for Harriet M. Harvey, and Harriet M. Harvey and James M. Harvey, joined in the execution of an instrument of the following tenor:

"We hereby consent that hereafter all payments made by James M. Harvey to Brokaw Bros., of New York, may, whenever any indebtedness is due and payable from said James M. Harvey to said Brokaw Bros., other than that named in the mortgage this day executed by us to said Brokaw Bros., be applied to such other indebtedness."

The account with Brokaw Brothers seems to have been continued in the name of Mrs. Harvey down to May 21, 1873, at which date it was balanced and closed, and the amount then appearing due was charged on their books to James M. Harvey. He thereafter continued a running account with them down to August 30, 1875, at which date a written agreement was entered into between him and them, in which it was recited that the indebtedness, on settlement, amounted to $14,183.39, and that Harvey had given his twelve promissory notes therefor, payable respectively at the end of each month for twelve months from their date, and it was agreed that, upon the payment of each note, Brokaw Brothers would supply goods to Harvey to the amount of seventy-five per cent of the note paid, Harvey to settle on the first day of each month for the goods which he might thereafter receive, by giving his note due in four months. Isaac V. Brokaw testifies that no part of the indebtedness secured by the mortgage was included in the settlement, and we find no evidence disputing his testimony in that respect.

On the 30th day of December, 1877, James M. Harvey died testate, and by his last will and testament,—after making certain specific bequests,—he gave one-half of the residue of his property to Harriet M. Harvey, his widow, and a one-fourth interest in his business to each of his two sons, James M. Harvey Jr. and Frank W. Harvey. His will also appointed

his widow and his two sons his executors, and they acted as such, the estate being settled and the executors discharged January 26, 1885. James M. Harvey, during his lifetime, paid various sums of money to be applied upon his indebtedness to Brokaw Brothers not included in the mortgage, but leaving, as it seems, $6588.11 of the unsecured indebtedness unpaid at the time of his death. No payments on the indebtedness secured by the mortgage were made by him except the interest. Neither the indebtedness secured by the mortgage, nor that which was unsecured, was presented in the Probate Court as a claim against the estate.

After the death of James M. Harvey, his widow and two sons took control of the business and carried it on under the firm name of Harvey Brothers. That continued until some time in 1881, when Mrs. Harvey withdrew therefrom. Harvey Brothers continued their dealings with Brokaw Brothers, and in the course of such dealings, they paid the unsecured indebtedness in full, such payments being made before the estate was settled, and within two years after the death of Harvey. They also paid the interest on the mortgage to June 27, 1883, the rate of the interest, however, having been reduced by agreement of the parties, from seven to six per cent, shortly before the death of James M. Harvey, the reduction commencing June 27, 1876.

The pleadings in the case are exceedingly, and as we think, unnecessarily complicated, and no useful purpose would be subserved by any attempt on our part to disentangle them or show the precise manner in which the various propositions of fact upon which counsel now rely are presented. At the hearing, which was had on pleadings and proofs, the court found the material allegations of the bill to be true, and found that there was due the complainants on the mortgage the sum of $14,492.85, that being the principal sum secured by the mortgage and interest thereon from June 27, 1883, to May 9, 1890, the date of the decree, and certain moneys paid by the

complainants for taxes on the mortgaged premises and inter-
est thereon. The court thereupon rendered the usual decree
of foreclosure, and for the sale of the mortgaged premises to
make the amount thus found due and costs. That decree has
been affirmed by the Appellate Court on appeal, and this ap-
peal is from the judgment of affirmance.

The first point urged on behalf of the appellants is, that
there is a variance between the allegations of the bill as to
whose indebtedness was secured by the mortgage and the
proof upon that question. The original bill alleged that, on
the day of the date of the mortgage, James M. Harvey was
indebted to Brokaw Brothers in the sum of $10,032.65, set-
ting forth specifically the several items of indebtedness sched-
uled in the mortgage, and that being so indebted, he agreed
to pay such indebtedness to Brokaw Brothers on or before
three years from that date, with interest as specified in the
mortgage, and that to secure such indebtedness, the defend-
ants executed the mortgage, the bill setting out a copy of the
same to be taken as a part of the bill. The complainants
afterward, by leave of the court, amended their bill, by strik-
ing out the name of James M. Harvey where it first occurs
therein, and inserting in lieu thereof that of Harriet M. Har-
vey, and alleging that, while the mortgage referred to the
indebtedness as that of James M. Harvey, it was in fact the
indebtedness of Harriet M. Harvey, for goods sold and deliv-
ered to her, and for which she was charged on the complain-
ants' books; that credit was extended to her on the faith of
her ownership of the mortgaged premises, and her promise to
give a mortgage.

Subsequently the bill was again amended, so as to allege
that, on February 29, 1872, Mr. and Mrs. Harvey were con-
cerned in and carrying on the business of a clothing merchant
in Chicago, in the name of one or the other, or in the interest
of one or the other, and that both were actually concerned in
the establishment, and in having the same carried on. The

bill sets up the contract of February 29, 1872, the substance of which has already been stated, and alleges that the complainants, relying upon the representations contained in that instrument, extended credit to them to the amount of $10,-032.65, for merchandise sold and delivered by the complainants to them, to be added to the stock in the store in Chicago conducted by them or in which they were interested, and that credit was given to Harriet M. Harvey, and the goods were billed and sent to her address in Chicago, and that to carry out their undertaking, the mortgage was executed reciting that James M. Harvey was indebted for the goods sold and delivered to him, and that he had agreed to pay for them on or before three years from that date with interest; that while the mortgage referred to the indebtedness as that of James M. Harvey, it was in fact the indebtedness of Harriet M. Harvey, for goods sold and delivered to her, and for which she consented to be and was charged; that the mortgage was drawn at the instance of Mr. and Mrs. Harvey and by their direction, or that of one of them, and was recorded in the absence of the complainants, without the intention of changing the personal liability of Harriet M. Harvey for the indebtedness, and it should be held as security for the indebtedness as if Harriet M. Harvey was principal, as she in fact was and is.

Now if it be conceded that the evidence proves, as the court found, that the indebtedness in question, at the time it was incurred, was in fact that of James M. Harvey, we are unable to see that there is any such variance between the allegations of the bill and the proofs as can constitute any valid objection to the decree as rendered. So far as that question is concerned it seems to us to be quite immaterial whether, prior to the execution of the mortgage, the indebtedness which that instrument was executed to secure was that of James M. Harvey or his wife. By the mortgage, to which they both were parties, and by the recitals of which they were both bound, it was declared to be the indebtedness of James M. Harvey, and

it was recited that he had agreed to pay it, and it thereby became, for all the purposes of giving validity to the mortgage, his debt. If he was in fact the debtor, as the court finds he was, all that can be said is, that the allegations of the bill seeking to charge Mrs. Harvey as the original and therefore the principal debtor are disproved, and that the complainants are entitled to take nothing by those allegations. But the right of the complainants to a foreclosure of the mortgage and sale of the mortgaged premises does not rest at all upon those allegations. Whether the indebtedness for which the mortgage was given was originally that of Mr. Harvey or of his wife, they have, by the mortgage, agreed to treat it as Mr. Harvey's indebtedness and to secure its payment as such, and the validity of the mortgage in no way depends upon who was in fact the original debtor.

We may conjecture that the complainants' attempt to show that Mrs. Harvey was the original and therefore the principal debtor, was made for one or both of the following purposes, viz: (1) to entitle themselves to a deficiency decree against her in case the mortgaged premises should not sell for a sufficient sum to satisfy the amount secured by the mortgage and costs, or, (2) to show that she could not have sustained the relation of surety to her husband, so as to relieve the case of those legal consequences which the defendants are seeking to reach by setting up and insisting upon that relation. But the failure to prove her the principal debtor constituted no such variance between the *allegata* and the *probata* as made it improper for the court to award a decree of foreclosure and sale.

The next point made is, that the evidence tends to show that a bond was executed with the mortgage sought to be foreclosed, and that before foreclosure should have been had, the bond should have been produced, or its absence accounted for. No bond is referred to in the mortgage, and from that fact alone a strong inference arises that none was executed. The only evidence tending to show the existence of a bond is

found in a mere reference in a letter from the complainants to Harvey, dated September. 24, 1873, to "the bond we hold," and in an entry on the complainants' books of a credit to Harvey of $10,032.65, "by bond and mortgage on property in Hyde Park," etc. Isaac V. Brokaw testifies that there was no bond with that mortgage, so far as he knows, and that the credit on the books, so far as it referred to a bond, was a clerical error. In view of all the evidence, we think the court was justified in holding that the execution of a bond was not proved, and in not requiring its production.

It is next contended that the complainants' right to a decree of foreclosure is barred by the Statute of Limitations. The mortgage, by its terms, became due December 27, 1875, and the original bill in this case was filed July 22, 1884, which was less than ten years after the maturity of the mortgage. Section 11 of the Statute of Limitations provides that no action for the foreclosure of a mortgage shall be commenced, unless within ten years after the right of action accrues. It would seem to be very plain that the present action was commenced within the period of limitation thus fixed.

But the position seems to be taken that, as the indebtedness secured by the mortgage was an open account, a different period of limitation should be applied. Without attempting to decide whether a mortgage which merely secures an open account, without furnishing in itself any written evidence of the indebtedness, should be subject to the limitation provided in section 15 of the act, it is sufficient to say that this is not that case. While no promissory note or bond was executed as evidence of the debt, the mortgage itself recites, and by such recital admits, the indebtedness, its character and amount, and also recites, thereby admitting an express promise on the part of Mr. Harvey to pay it. These recitals and admissions constitute of themselves written evidence of the indebtedness, bringing an action for its recovery within the limitation provided in section 16, viz., ten years.

But it is claimed that Harvey failed to pay certain install-
ments of interest which became due more than ten years be-
fore the commencement of the suit, and it is insisted that the
right of action for the foreclosure of the mortgage then accrued,
and that the statute therefore then commenced to run, and that
although those installments of interest were afterwards paid
by Harvey in his lifetime, such payment did not arrest the
running of the statute, and that ten years having elapsed after
the first default and before the commencement of the suit, the
right to foreclose must be deemed to be barred. It is true
the mortgage contains a power of sale in case of default in the
payment of the money secured or any part thereof, or of the
interest or any part thereof, according to the tenor and effect
of the agreement recited in the mortgage, but there is no
provision in relation to a foreclosure by suit in case of such
default, or declaring or giving the mortgagees power to declare
the principal due in case of default in the payment of interest.
Under these circumstances it seems clear, that the statute did
not commence to run as against the principal indebtedness
until it became due by the terms of the mortgage, and as the
interest once in default has been paid, no question can arise
as to whether that is barred by the statute.

The next point made is, that Mrs. Harvey executed the
mortgage as a mere surety for her husband, and that under
the provisions of section 3, of chapter 132, of the Revised
Statutes, she is relieved from the payment of the mortgage to
the extent that the mortgage indebtedness might have been
collected from the estate of her husband, if it had been pre-
sented in proper time in the Probate Court. That section
provides that, whenever the principal maker of any note, bond,
bill or other instrument in writing shall die, if the creditor
shall not within two years after the granting of letters testa-
mentary or of administration present the same to the proper
court for allowance, the sureties thereon shall be released from

the payment thereof to the extent the same might have been collected of such estate, if presented in proper time.

No statute of this character was in existence at the time the mortgage in question was executed, the statute here referred to having gone into force July 1, 1874. The question then is whether, if it be admitted that Mrs. Harvey executed the mortgage as a mere surety, the statute is to be given a retroactive effect, so as to apply to this mortgage. This question, as applied to a statute quite analogous to the one relied upon here was fully considered by us in *Fisher* v. *Green,* 142 Ill. 80, and we held that the statute there under consideration did not have a retrospective operation. What we said in that case will, in the main, apply here, and need not be repeated. It may also be noticed that the act of 1869, which provided that a surety upon a joint note should be released by a failure of the holder to present the same to the proper court for allowance against the estate of the principal, upon his death, has been considered by this court in its application to notes executed after its passage. *House* v. *Trustees of Schools,* 83 Ill. 368; *Curry* v. *Mack,* 90 id. 606; *Huddleston* v. *Francis,* 124 id. 195. In these cases it was held that the statute there in question was not a mere statute of limitation, but that it was to be considered as entering into and forming a part of the contract itself. While statutes in force at the time a contract is made are usually to be regarded as entering into and forming a part of the contract, upon the theory that parties must be deemed to contract with reference to existing laws, so as to adopt those laws as parts of their agreements, the same force can never be given to statutes subsequently enacted. Parties are not presumed to contract with reference to the provisions of future statutes, and such statutes can not be said to enter into or form a part of their agreements. It is plain then that the basis upon which the act of 1869 was enforced in the cases above cited is wholly wanting where an attempt is made to apply the act of 1874 to a mortgage executed in 1872.

The further point is made—and it is the one upon which principal reliance seems to be placed—that Mrs. Harvey having executed the mortgage merely as surety, the complainants have so dealt with her principal as to release her and her property from liability.

The contention is, first, that she was released by the modification of the contract by which the rate of interest was reduced from seven to six per cent. The evidence however warrants the conclusion that this reduction in the rate of interest was made not only with her knowledge, but at her express solicitation, and that being the case, her liability as surety could not have been affected by it.

It is next contended that she was released by certain extensions of the time of payment of the money secured by the mortgage. We have examined the evidence with care, and fail to find any satisfactory evidence that any such contract of extension was ever made. It is shown that after the mortgage became due in 1875, it was allowed to run along from year to year, the interest being paid with more or less of regularity until June 27, 1883, but it is not proved, so far as we are able to find, that any contract, upon a valuable consideration, for an extension of the time of payment for a definite period was ever entered into. Merely allowing the mortgage to run from year to year and receiving payment of the interest is not sufficient to discharge a surety. To have that effect, there must be a valid and binding agreement for an extension, for a definite period, entered into, upon a valuable consideration. No such agreement seems to be proved.

Furthermore, since the death of her husband in 1877 she, as one of his executors, and especially as one of his residuary legatees, has been one of his legal representatives, and so far as she has occupied that position, she has taken his place as principal in the mortgage. Upon his death, she, with her two sons, entered into, took charge of and carried on the very business out of which the indebtedness secured by the mort-

gage grew. Whatever was afterwards done in relation to the mortgage, was done by the executors, of whom she was one, or by the firm of Harvey Brothers, of which she was a partner. It is difficult therefore to see how any dealings with the mortgagees could have taken place after her husband's death without her knowledge or her personal participation. What was done was done either by herself or by others for whose conduct in the matter she was personally responsible. And what was done under such circumstances can hardly be said to have the effect of discharging her from her obligations as surety.

Field, the trustee, has filed an answer and cross-bill in his own behalf, seeking to claim for himself the position and immunities of a surety, and praying that the legal title vested in him be discharged from the lien of the mortgage. It is clear that, under the declaration of trust in the deed conveying the premises in question to him, he has no title or estate which can enable him to set up or claim for himself, independently of his beneficiary, any equities in the mortgaged premises, and that whatever is binding on her is in like manner binding upon him. He holds the mere naked legal title, to be disposed of by him as his beneficiary sees fit to direct, and beyond that he has no rights in or control over the premises. The defense set up by his beneficiary to the mortgage having failed, his defense must for the same reason fail also.

After carefully considering all the objections urged to the decree, we are of the opinion that none of them are well taken, and the only result we are able to reach is, that the judgment of the Appellate Court affirming the decree must be affirmed.

*Judgment affirmed.*