*In re* ESTATE OF BYRON H. TIEMANN, Deceased (Chapin State Bank, Claimant-Appellant, v. First State Bank of Beardstown, Claimant-Appellee).

Fourth District   No. 4—85—0435

Opinion filed March 3, 1986.

WEBBER, J., specially concurring.

Rammelkamp, Bradney, Hall, Dahman & Kuster, of Jacksonville (Theodore C. Rammelkamp, Jr., of counsel), for appellant.

McClure, Brannan & Hardwick, of Beardstown (Thomas J. Brannan, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

Claimant, Chapin State Bank (Chapin Bank), appeals an order of the circuit court of Cass County entered on May 23, 1985, in the estate of Byron H. Tiemann, deceased. The order allowed a claim of the First State Bank of Beardstown (Beardstown Bank) in the total sum of $101,316.73 representing $74,625.38 of principal and $26,691.35 of interest. The claim arose from a guaranty given by the decedent to Beardstown Bank to secure indebtedness of C & T, Inc., to that bank. The assets of the estate were insufficient to pay all claims. Beardstown Bank and Chapin Bank were both claimants of the seventh class, and Chapin Bank had objected to the claim. We affirm.

The underlying facts are not in dispute. The decedent and Nora Cox had each owned 50% of the capital stock of C & T, Inc. During the summer of 1981, they decided to have C & T, Inc., construct and operate a restaurant at Virginia in Cass County. Pursuant to arrangements to obtain financing at the Beardstown Bank, on September 21, 1981, the decedent and Cox executed and delivered to that bank identical, unlimited, continuing, written personal guaranties for the corporate debts of C & T, Inc. At the end of construction, C & T, Inc., exe-

cuted and delivered to Beardstown Bank a note for $75,000 together with a purported mortgage executed by that corporation covering the premises on which the restaurant was built. The document purported to secure the note. Additional borrowings were made, and C & T, Inc., executed and delivered a $40,000 demand note.

The debtor corporation fell behind in payments, and, on May 12, 1983, Beardstown Bank accelerated the $75,000 note and made demand for payment on both. The decedent asked for additional time on May 18, 1983. No further proceedings concerning the notes took place before the death of the decedent on July 30, 1983. Sometime thereafter, the Beardstown Bank discovered that the real estate which was listed in the purported mortgage of September 21, 1981, was owned by decedent and Cox as joint tenants and not by C & T, Inc. Upon the decedent's death, his interest had passed, by operation of law, to Cox. After negotiations with Cox, but without the consent of the personal representative of decedent's estate, an agreement was entered into between Cox and Beardstown Bank whereby Cox gave a mortgage to that bank covering the land in question and securing the $75,000 note. The consideration given to Cox for her execution and delivery of the mortgage was recited in that instrument in these words:

> "For and in consideration of $1.00 and the *forebearance* [*sic*] of the First State Bank of Beardstown, Illinois, to *immediately pursue* the remedies available to it pursuant to a certain Loan Guaranty Agreement, I, Nora M. Cox, signed on September 24, 1981, this indenture witnesseth ***." (Emphasis added.)

The instrument did not contain any statement that Beardstown Bank reserved its rights against the estate. See Restatement of Security sec. 135(2) (1941).

■ The thrust of the defense which Chapin Bank contends that the estate has to the claim of Beardstown Bank arises from the temporary forbearance Beardstown Bank granted to Cox. Chapin Bank asserts that the forbearance impaired the estate's right to contribution from Cox and thereby discharged it of a portion of its liability under the guaranty. Chapin Bank also maintains that negligent failure of Beardstown Bank to obtain a proper mortgage to secure the $75,000 note worked a discharge of decedent's guaranty. We find the latter argument unpersuasive because: (1) Any detriment to the estate resulting from failure to obtain the mortgage was cured when a mortgage was obtained; and (2) the decedent was clearly a participant in the failure to properly secure the $75,000 when he participated in the execution of a mortgage by the corporation of property that he actually owned.

■ The first contention by the Chapin Bank presents a much more complicated and difficult question. Beardstown Bank responds that neither the estate nor Chapin Bank were actually damaged by the transaction in which Cox was given a temporary forbearance but were in fact benefited by the security gained. The Beardstown Bank describes the transaction as a commercially reasonable one. In addition, the Beardstown Bank calls our attention to the following provision of the identical guaranties:

> "This is a continuing guaranty and shall not be revoked by death, and shall be binding on the heirs, executors, administrators and assigns of the undersigned and *shall continue in force under any and all circumstances* as to all indebtedness, obligations and liabilities contracted or incurred prior to the receipt of said Creditor of written notice of the revocation hereof." (Emphasis added.)

The Beardstown Bank contends that the foregoing language constitutes a waiver of any conduct in regard to its forbearance to Cox that might otherwise discharge the estate on the decedent's guaranty.

The trial court agreed with the position of the Beardstown Bank and ruled in its favor for those reasons.

The parties agree that, absent contrary agreement between guarantor and guarantee, the release of a co-guarantor relieves remaining guarantors of liability to the guarantee to the extent of the proportionate value of their respective lost rights of contribution against the released guarantor. (Restatement of Security sec. 135(1) (1941); 38 Am. Jur. 2d *Guaranty* sec. 91 (1968).) Thus, had the Beardstown Bank completely released Cox of her guaranty, the estate would have been released to the extent of one-half of the debt owed to Beardstown Bank. The rationale for this is that upon the release of Cox, the estate would be damaged by no longer having a right of 50% contribution against Cox for any sums it became indebted on the guaranty to Beardstown Bank. This would be similar to the rule that a guarantor is discharged when the creditor improperly releases other security. See *Rogers v. Trustees of Schools* (1868), 46 Ill. 428; *Passman v. Budnizky* (1936), 284 Ill. App. 533, 1 N.E.2d 707.

Here, we are not faced with a release of a co-guarantor but merely with a promise of a temporary forbearance against that co-guarantor. No case directly in point has been called to our attention. As the decedent and Cox were liable on separate instruments of guaranty rather than on a negotiable note, the law in regard to negotiable instruments is not applicable. .(*Ishak v. Elgin National Bank* (1977), 48 Ill. App. 3d 614, 363 N.E.2d 159.) However, if Cox and the dece-

dent had been guarantors on such an instrument, section 3—606(1) of the Uniform Commercial Code would appear to provide that the estate would be partially discharged on its guaranty because of the forbearance against Cox. That section states in part:

"The holder discharges any party to the instrument to the *extent that* without such party's consent *the holder*:

(a) without express reservation of rights *releases or agrees not to sue* any person against whom the party has to the knowledge of the holder *a right to recourse* or *agrees to suspend the right to enforce against* such person the instrument or collateral or otherwise discharges such person \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 26, par. 3—606(1).

The Chapin Bank calls our attention to the holding in *Keach v. Hamilton* (1899), 84 Ill. App. 413, that a guarantor has a right of exoneration against his co-guarantor even though no payment has been made by any guarantor. It also cites the more recent holding in *Nissenberg v. Felleman* (1959), 339 Mass. 717, 162 N.E.2d 304, that to secure relief in equity to require a co-guarantor to pay its fair share, the co-guarantor seeking relief must be able to allege that the other is under a *present duty to also pay the debt*. As stated in *Nissenberg*, the purpose of such a suit is, when possible, to release a guarantor from being required to pay more than its share and then have to seek relief for contribution. Under these rules, the estate would have been deprived of an opportunity to seek this relief during the period of time the Beardstown Bank was required to forbear against Cox.

As the trial court indicated and as Beardstown Bank agrees, any actual damage resulting to the estate from the forbearance which that bank gave to Cox would appear to have been minimal or nonexistent and the estate would appear to have gained by the obtaining of the security of the mortgage covering the $75,000 note. The estate has not yet been required to actually pay the claim. Under *Keach* and *Nissenberg*, the estate would have an action in equity to require Cox to come forward and pay her share of the amount due on the guaranties. No showing has been made that the delay in bringing such an action was detrimental to the estate. However, the forbearance did impair the estate's position at least technically, and the authority cited could indicate that absent contrary agreement with the Beardstown Bank, the estate was discharged as to some part of the claim.

We need not decide the foregoing technical question, because we agree with the trial court and Beardstown Bank that, by the terms of the guaranty agreements, the guarantors waived claims of discharge at least of the minor technical nature asserted here. That waiver

arose from the provision of the guaranties stating that they *"shall continue in force under any and all circumstances* \*\*\*." (Emphasis added.)

The Chapin Bank agrees that the Beardstown Bank and the decedent could have agreed in the guaranty that conduct such as the forbearance granted Cox would not bring about any discharge of the guaranty given by the decedent. (38 Am. Jur. 2d *Guaranty* sec. 83 (1968).) In *Barrett v. Shanks* (1943), 382 Ill. 434, 47 N.E.2d 481, *Ishak v. Elgin National Bank* (1977), 48 Ill. App. 3d 614, 363 N.E.2d 159, and *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 303 N.E.2d 541, express waiver of particular types of conduct that might otherwise discharge a surety or guarantor have been upheld. As the provision stating that the guaranty shall remain in force "under any and all circumstances" does not have that specificity, Chapin Bank argues that the general rule that "guaranty agreements are to be strictly construed in favor of the guarantor" should prevail. (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 252 N.E.2d 734, 739.) The claim of waiver would then be rejected.

In *Farmer State Bank v. Doering* (1980), 80 Ill. App. 3d 959, 400 N.E.2d 705, where the court construed an ambiguous guaranty most strongly in favor of the guarantor and found no liability, this court recognized that where the guaranty is unequivocal, it must be interpreted according to the language used, citing *National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 243 N.E.2d 264. More recently, the rule stated in *National Acceptance Co.* has been followed in *Bank of Naperville v. Holz* (1980), 86 Ill. App. 3d 533, 407 N.E.2d 1102. The supreme court has held that contracts of guaranty are to be interpreted under the same rules as other contracts. *Blackhawk Hotel Associates v. Kaufman* (1981), 85 Ill. 2d 59, 421 N.E.2d 166.

The estate maintains that the language concerning the continuing nature of the guaranty has reference only to the length of time in which the Beardstown Bank might make loans to C & T, Inc., which would be covered by the guaranties. The reference to indebtedness arising prior to notice of revocation does speak to that point, but the language also states that the guaranty of the indebtedness arising in that time span shall (1) be binding on the heirs, et cetera, of the guarantors; and (2) "continue in force under any and all circumstances." Had the conduct of the Beardstown Bank in regard to the estate been egregious, or had the forbearance given Cox caused the estate substantial damage, holding the terms of the guaranty to have worked a

waiver might be inequitable. Absent such a situation, and considering the unequivocal language of the guaranty given by the decedent, we hold that the decedent waived any claim arising from the forbearance of the Beardstown Bank.

The estate was liable under the guaranty. The trial court properly allowed the claim. We affirm its order in doing so.

Affirmed.

MORTHLAND, J., concurs.

JUSTICE WEBBER, specially concurring:

I agree that the trial court should be affirmed, but I arrive at that conclusion by a slightly different analysis and suggest that much of what is said in the principal opinion must be construed as *dicta*.

I believe that everyone concerned in this litigation has been bemused and misled by the mortgage given by Cox. It might well be designated as the "wild card" in this legal deck. The record is clear that the Beardstown Bank never had a mortgage from the corporation, the principal. Whose fault this might be is immaterial. The legal fact is that at the time of Tiemann's death, the bank held only the general guaranties of Tiemann and Cox, and Cox succeeded to the title of the real estate as surviving joint tenant. There seems to be no question that the corporation was in default and therefore the bank was privileged to proceed against both Tiemann and Cox on their guaranties. Under familiar rules of suretyship, it could hold either or both liable.

The bank then took a two-pronged approach: It filed a claim in the Tiemann estate and took a mortgage from Cox together with an agreement to forbear against her for an indefinite time. I cannot construe "immediately" as anything other than a vague and unascertained forbearance.

Two things are apparent from his action by Cox and the bank: First, Cox gave additional security for her liability. In 72 C.J.S. *Principal & Surety* sec. 154, at 643 (1951), it is stated, "A surety is not discharged by the act of the creditor or obligee in taking additional security, or receiving possession of property of the principal, although it is sufficient to pay the debt." *A fortiori*, a co-surety would not be discharged.

Second, Cox received an indefinite extension agreement. It has long been the law in this State that such an extension is not sufficient to discharge a surety. In *Field v. Brokaw* (1893), 148 Ill. 654, 671, 37

N.E. 80, 84, it is stated:

> "It is next contended that she was released by certain extensions of the time of payment of the money secured by the mortgage. \*\*\* Merely allowing the mortgage to run from year to year and receiving payment of the interest is not sufficient to discharge a surety. To have that effect, there must be a valid and binding agreement for an extension, *for a definite period,* entered into, upon a valuable consideration." (Emphasis added.) (See generally 72 C.J.S. *Principal & Surety* sec. 175, at 652 (1951).)

Thus, neither the giving of the mortgage nor the indefinite forbearance contained therein was sufficient to discharge the Tiemann estate, a co-surety.

What is really at stake here is not only Tiemann's right of contribution against Cox but also Cox' right against Tiemann.

The right of contribution was explained in *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 94, 172 N.E. 7, 12, as follows:

> " 'Where there are sureties for the same principal debtor and for the same debt or obligation and one or some of them have paid or satisfied more than his or their proportionate share of the debt or obligation, he or they are entitled to contribution from the other sureties in order to equalize the common burden. \*\*\*' [Citation.] The ground of relief does not stand upon any notion of mutual contract, express or implied, by the sureties to indemnify each other in proportion, but it arises upon principles of equity, independent of contract. [Citation.] The payment for which contribution is allowed may have been effected either by a cash payment or some other way, as by a new note with additional security, and it is not necessary that the payment should have been made under actual compulsion or that the party making the payment should actually have been sued. [Citation.]''

The right of contribution is necessarily inchoate until one of the co-sureties has made payment of some kind. Until that occurs, there can be no testing of proportionate shares.

All we know in the instant case is that the bank has had a claim against the Tiemann estate allowed for the entire debt. The allowance of a claim is tantamount to a judgment. (*Wheeler v. Dawson* (1872), 63 Ill. 54.) Because we are told that the estate is insolvent, we cannot know what amount (if any, this being a seventh class claim) may eventually be paid. On the other hand, there is also no indication in the record as to how much Cox has paid, or will pay. She has given a

mortgage in partial payment, but there is no indication whether the bank will proceed to foreclose the mortgage or proceed under the guaranty. It has the option of doing either. (*Farmer City State Bank v. Henry* (1985), 138 Ill. App. 3d 854, 486 N.E.2d 297.) However, it is limited to one satisfaction. *Farmer City State Bank v. Henry* (1985), 138 Ill. App. 3d 854, 486 N.E.2d 297.

The net result here appears to be the beginning of extended and piecemeal litigation. Until it is finally determined how much both the Tiemann estate and Cox have paid toward the debt (Tiemann under the adjudicated claim and Cox under either mortgage foreclosure or suit on her guaranty or both), the question of contribution must of necessity remain unresolved. That fact alone, however, does not forfend the bank from taking the action which it did in order to protect itself. Unlike tort contribution, there is no requirement that equitable contribution be brought in a pending action.