## In the Matter of the Estate of Charlotte E. Holmes, Deceased.

1. CONSTRUCTION OF CONTRACTS — *Courts Will Not Adopt a Construction Which Does Violence to the Rules of Language or of Law.*— Courts will not adopt a construction of an instrument which does violence to the rules of language or of law. Words must not be forced away from their proper signification to one entirely different, although it may be obvious that the words used, either through ignorance or inadvertence, express a different meaning from that intended.

2. SAME—*Intention of the Parties.*—Courts uniformly endeavor to ascertain the intention of the parties and to give effect to that intention.

3. SAME — *Where the Language is Unequivocal.* — Where the language of a legal instrument is unequivocal, although in it the parties may have failed to express their real intentions, there is no reason for construction; the legal effect of the agreement must be enforced.

4. SAME—*General Rule of Construction—Sureties and Principal.*— In ascertaining the meaning of a contract, words are to be construed as they are ordinarily understood, and in this respect no distinction can be made between the contract of a surety and that of a principal.

Claim in Probate.—Trial in the Circuit Court of Cook County, on appeal from the Probate Court of said county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Finding and judgment for claimant. Error by defendant. Heard in this court at the March term, 1898. Reversed. Opinion filed November 16, 1898.

### STATEMENT.

This writ of error is to reverse a judgment of the Circuit Court, rendered on appeal from the Probate Court, allowing a claim of Maud A. Hageman, defendant in error, against the estate of Charlotte E. Holmes, deceased, for the

sum of $2,408.12. The cause was tried by the court, without a jury, by agreement of the parties, on a stipulation as to the facts. It appears from the stipulation that August 31, 1891, John Holmes and Charlotte E. Holmes, his wife, were equal owners in fee of the premises designated in the following plat as "Part of lot seven, School Trustees' Sub.," etc.

The top of the plat is north and the only street frontage of the premises is the east frontage on State street. Holmes and his wife, Charlotte, being such owners, August 31, 1891, conveyed to Maud Hageman, by warranty deed of that date, that part of the said premises designated on the plat as "Maud Hageman subdivision of part of lot 7," etc. A copy of the deed is contained in the stipulation. At the time of

the conveyance, the part so conveyed to Maud Hageman was not subdivided, but was subdivided by her shortly afterward. At the same time the conveyance to Hageman was executed, viz., August 31, 1891, Holmes and his wife executed to Hageman an instrument in writing, of which the following is a copy :

"Know all men by these presents, that we, John Holmes and Charlotte E. Holmes, his wife, both of the city of Chicago, in the County of Cook and State of Illinois, are held and firmly bound unto Maud A. Hageman, of Chicago, in the County of Cook and State of Illinois, in the amount for special assessment for the opening of Armour avenue, for the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

" Witness our hands and seals this 31st day of August, A. D. 1891.

" The condition of the above obligation is such, that whereas, John Holmes and Charlotte E. Holmes, his wife, have sold the following described property, viz., that part of lot seven (7), described as follows : Commencing at a point one hundred and sixty-four and thirty-three hundredths (164 33-100) feet east of the railroad, and two hundred and ten and twenty-five hundredths (210 25-100) feet north of south line of lot seven (7), School Trustees' subdivision, section sixteen (16), township thirty-eight (38) north, range fourteen (14), east of the third principal meridian; thence north one hundred and sixty (160) feet; thence east ninety-nine and one-tenth (99 1-10) feet; thence south one hundred and sixty (160) feet; thence west ninety-nine and one-tenth (99 1-10) feet, to the place of beginning, to Maud A. Hageman, subject to a special assessment which is now pending on said property, and we hereby agree to pay said costs for the opening of Armour avenue in front of said above described property.

" We also hereby agree to assume and pay for the opening of an alley between Dearborn street and Armour avenue in rear of said above described property.

" Now if the said John Holmes and Charlotte E. Holmes shall perform all the covenants above mentioned, then this obligation to be void; otherwise, to remain in full force and effect.

John Holmes.     (Seal.)
Charlotte E. Holmes.     (Seal.)"

June 5, 1891, a condemnation proceeding was commenced

in the Circuit Court of Cook County, pursuant to an ordi-
nance theretofore enacted by the city council of the city of
Chicago, and such proceedings were had therein that sub-
sequent to February 25, 1892, at which last date the ordi-
nance was repealed, by ordinance passed by said city council,
the condemnation proceeding was dismissed because of said
repeal.

July 14, 1893, "another ordinance was passed by the city
council of the city of Chicago, ordering said Armour avenue
to be opened from Fifty-eighth street to Fifty-ninth street
in front of said real estate," and such proceedings were had
in pursuance thereof that a petition was filed in the Circuit
Court of Cook County, the compensation and damages were
ascertained by a jury and commissioners were appointed
by the court to make a special assessment to pay the cost of
the improvement, which was done, and the special assess-
ment confirmed, and lots 1, 3, 4, 5 and 6, in said Hageman
subdivision, were among the lots assessed, and the special
assessment became a lien on said lots.

It seems from the stipulation that the lots were permit-
ted to be sold for the special assessment, because it is stipu-
lated that Maud Hageman redeemed the lots, paying the
assessment against each, and the penalty, etc., Holmes and
his wife having failed to pay the assessments, although they
had notice of them. Lots 1, 3, 5 and 6 were owned by
Maud Hageman and were assessed in her name. Lot 4 had
been previously conveyed by her, but she was bound by
the terms of the conveyance to pay the special assessment
against it. The judgment of the court was for the amount
of the special assessments paid by Maud Hageman, with
interest from the times, respectively, of payment.

Appellant requested the court to hold as law the follow-
ing propositions, which request the court refused:

"The court holds that the instrument in writing, shown
as 'Exhibit C,' in the agreed statement of facts read in
evidence, refers to a special assessment then pending, and
that evidence of any special assessment begun subsequent
thereto is not admissible in evidence under said instru-
ment."

" The court holds that the facts stated in the fifth, sixth, seventh and eighth paragraphs, or subdivisions, in the agreed statement of facts having arisen subsequent to the execution of the instrument marked ' Exhibit C,' can not be considered by the court as evidence showing a breach of the condition written in ' Exhibit C,' and because all of said matters relate to another and different assessment than that referred to in ' Exhibit C.' "

Exhibit C, referred to in these propositions, is the instrument executed by Holmes and wife, a copy of which is set out in full, *supra*, and which is referred to by counsel as a bond.

The fifth, sixth, seventh and eighth paragraphs of the stipulation referred to in the second of the above propositions, relate exclusively to the ordinance of July 14, 1894, ordering the opening of Armour avenue from Fifth-eighth street to Fifty-ninth street, the proceedings thereunder heretofore mentioned, the payment by Maud Hageman of the special assessments and the failure of Holmes and wife to pay them.

E. W. Adkinson, attorney for plaintiff in error.

Allen & Blake, attorneys for defendant in error.

Mr. Justice Adams delivered the opinion of the court.

It will be observed that the stipulation in respect to the condemnation proceeding, instituted June 5, 1891, does not, in terms, state that it was instituted for the opening of Armour avenue, or what it was for. This part of the stipulation, however, is immediately followed by the words, " That afterwards, to wit, July 14, 1893, another ordinance was passed by the city council of the city of Chicago, ordering said Armour avenue to be opened," etc., and the stipulation then proceeds to narrate the condemnation proceedings, etc., under the last mentioned ordinance. The use of the word " another" implies a previous ordinance for the same purpose. Also, counsel for defendant in error say, in their argument, " On June 5, 1891, a condemnation pro-

ceeding was commenced to open said avenue," meaning Armour avenue. It may, therefore, be assumed that the condemnation proceeding of 1891 was for the same purpose as that of 1893.

The contention of counsel for plaintiff in error is that the writing obligatory, in the form of a bond, executed by John Holmes and Charlotte Holmes to defendant in error, only bound the obligors to pay the special assessment pending against the property conveyed to defendant in error at the time of the conveyance, and by virtue of an ordinance then in force, and not any special assessment which might thereafter be levied under and by virtue of another ordinance. Defendant's counsel, on the contrary, contend that the writing obligatory bound the obligors to pay any assessment which might be made for the opening of Armour avenue in front of the property conveyed to defendant in error.

We concur in the proposition of defendant's counsel that the conveyance and writing obligatory, having been executed at the same time, and relating to the same subject-matter, must be construed together (Canterberry v. Miller, 76 Ill. 355), and therefore the undertaking of the obligors in the writing obligatory may be read as if set out at large in their deed of conveyance.

Inasmuch as the decision of the question involved depends on the proper construction of the contract, if there is room for construction, reference is made to the following rules, which must govern us in our decision:

" The parties are bound by the recitals in the writing." Wynkoop v. Cowing, 21 Ill. 570, 583; Ettelsohn v. Kirkwood, 33 Ill. App. 103.

" Courts can not adopt a construction of any legal instrument which shall do violence to the rules of language or the rules of law. Words must not be forced away from their proper signification to one entirely different, although it might be obvious that the words used, either through ignorance or inadvertence, expressed a very different meaning from that intended." 2 Parsons on Contracts, 6th Ed., Secs. 494, 495; see also Id., Sec. 496.

In Canterberry v. Miller, *supra*, the court say : " It is

Matter of Estate of Charlotte E. Holmes.

no part of the duty of courts to make contracts for parties. * * * In Benjamin v. McConnell, 4 Gilm. 436, it was held that in the construction of a contract, where the language used was ambiguous, courts uniformly endeavor to ascertain the intention of the parties and to give effect to that intention; but where the language is unequivocal, although the parties may have failed to express their real intentions, there is no reason for construction, and the legal effect of the agreement must be enforced."

In ascertaining the meaning of an instrument, the words of the agreement must be construed as they are ordinarily understood, and, in the application of this rule, no distinction can be made between the contract of a surety and that of a principal. Shreffler v. Nadelhoffer, 133 Ill. 536, 552.

We must look to the condition of the writing for the ascertainment of the undertaking of John and Charlotte E. Holmes. The words in the obligatory part of the instrument, viz., "are held and firmly bound unto Maud Hageman, of Chicago, in the county of Cook and State of Illinois, in the amount of the special assessment for the opening of Armour avenue," etc., are relied on by counsel for defendant in error, in support of their contention, but these words clearly relate solely to the penalty of the so-called bond, and are of no greater effect than if, instead of the words quoted, the amount of the assessment mentioned had been inserted in dollars as a penalty. The condition of the instrument recites the conveyance by Holmes and his wife of the property, describing it, to defendant in error, "subject to a special assessment which is now pending on said property," and then immediately following the word "property" are these words: "And we hereby agree to pay said costs for the opening of Armour avenue in front of said property."

The obligatory part of the instrument mentions a special assessment for the opening of Armour avenue. The recital quoted immediately preceding the words of agreement to pay, etc., is of a special assessment now pending, and the stipulation admits a condemnation proceeding instituted June 5, 1891, for the opening of Armour avenue, supple-

mental to which an assessment may well have been pending August 31, 1891, the date of the agreement. S. & C.'s Stat., Ch. 24, Art. 9, Sec. 53. In view of these circumstances, to what do the words "and we hereby agree to pay said costs for the opening of Armour avenue in front of said above described property" refer? The words "said costs" must be referred to costs previously mentioned in the instrument, and the only costs so mentioned are those represented by the special assessment then pending, and levied for the costs of opening Armour avenue.

Suppose it appeared in the deed of conveyance of the property to defendant in error, as it appears from the writing obligatory and the stipulation, that an assessment was pending for the opening of Armour avenue, and that immediately following the description of the property in the deed, these words occurred: "Subject to a special assessment which is now pending on said property, and we hereby agree to pay said costs for the opening of Armour avenue in front of said above described property;" could it be held otherwise than that the liability of the grantors was limited to the payment of the then pending assessment? We think not. In such case it might well be said the pending assessment, and that only, is recognized in the deed as an incumbrance; that, and that only, the grantors agreed to pay. The contention of counsel for defendant is, in substance, that the contract should be construed as if the obligors had, in terms, agreed to pay any special assessment which might at any time thereafter be levied on the property for the opening of Armour avenue. We can not so construe it without doing violence to the language used; without, in fact, forcing upon plaintiff in error a contract different from that made by his testatrix. We do not regard the contract as ambiguous or equivocal; on the contrary, we are of opinion that the liability of Charlotte E. Holmes and her husband is limited by the very words of the contract, to payment of the special assessment pending August 31, 1891, and that assessment having been abandoned by the repealing ordinance of February 25, 1892, there can be no recovery. The judgment will be reversed.