## Matej Cigler, Plaintiff in Error, v. Mary Keinath et al., Defendants in Error.

### Gen. No. 19,155.

APPEAL AND ERROR, § 1856*—*when surety liable for rents and profits pending appeal from order for writ of assistance.*  Bond on appeal from order granting a writ of assistance construed as rendering the surety liable for the rental value of the premises during the pendency of the appeal, court costs on appeal and the sheriff's fees for the execution of an *alias* writ of assistance after the affirmance on appeal, but not as including the amount spent for the printing of briefs nor for attorney's fees on appeal.

Error to the Municipal Court of Chicago; the Hon. HARRY P. DOLAN, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1913.  Reversed and judgment here.  Opinion filed March 10, 1914.

---

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

Charles T. Farson, for plaintiff in error.

John C. Wilson, for defendants in error.

Mr. Presiding Justice Smith delivered the opinion of the court.

An action was brought by plaintiff in error, Cigler, in the Municipal Court of Chicago against the defendants in error on an appeal bond. The court below entered judgment for $43.70, covering certain items of damages conceded to be within the condition of the appeal bond. Other items of damages claimed by the plaintiff below were disallowed by the court. The facts were stipulated upon the trial of the cause and this writ of error presents only a question of law as to the construction of the bond.

The circumstances under which the appeal bond was given were as follows:

On January 1, 1906, one Thomas Rudolph was the owner of certain real estate in the city of Chicago, known as No. 4630 Lincoln street. On that day he entered into a contract with Cigler, the plaintiff below, to construct an addition to a building, agreeing to pay therefor $870 upon the completion of the work. The building addition was completed about September 1, 1906. Thomas Rudolph died intestate about September 23, 1906, leaving no children, and leaving, as his heirs at law, Mary Keinath, wife of Ernest Keinath, Frances Collins, wife of John Collins, and Peter and Henry Rudolph, the two last named being minors.

On December 19, 1906, Cigler filed a bill in the Superior Court of Cook county to enforce a mechanic's lien for the building of the addition. The heirs of Thomas Rudolph were made parties to the bill. The record in that case shows that appearance was entered for the adult defendants, and service of summons was had on the infant defendants. April 12, 1907, a decree of sale was entered in the ca.., and subsequently a sale was had. The period .. redemption expired

without redemption having been made by any person interested, and a master's deed of the premises in question was made to Cigler, the complainant in that suit and plaintiff in error here. Cigler demanded possession of the premises, exhibiting his master's deed, etc., and, possession being refused, made application to the Superior Court for a writ of assistance. March 30, 1909, the Superior Court entered an order for a writ of assistance, directing the sheriff to remove from the possession of said real estate any of the defendants to the cause who might be in possession thereof, and put the complainant in possession.

From the order of the Superior Court granting the writ, an appeal was taken to this court by Mary Keinath and Ernest Keinath, her husband, Frances Collins and John Collins, her husband, and Peter Rudolph, and the appeal bond sued on in the court below was given. The bond is made by Mary Keinath, Ernest Keinath and Peter Rudolph as principals, and Joseph Spevak and others as sureties, in the penal sum of $1,000. The bond recites the entry of the order granting the writ of assistance, and recites the appeal taken therefrom. The condition of the bond is as follows:

"Now therefore, if the said Mary Keinath, Ernest Keinath and Peter Rudolph shall duly prosecute their said appeal with effect, and pay the costs and damages rendered or to be hereafter rendered against them in case said order shall be affirmed in said Appellate Court, then the above obligation to be void, otherwise to remain in full force and effect."

The case was pending in this court for about three years, the appellants therein remaining in possession of the premises in the meantime. The order granting the writ of assistance was affirmed by this court, and upon the case being redocketed in the Superior Court, an order for an *alias* writ of assistance was made under which the plaintiff in error, Cigler, finally obtained possession of the premises on March 18, 1912.

The plaintiff in error claims the right in this case to recover upon the bond for the rental value of the

premises during the time the possession was withheld from him by the taking of the appeal, namely, from March 30, 1909, to March 18, 1912.

It was agreed by the parties that the rental value should be computed at $15 per month. Plaintiff in error also claims to recover his attorney's fees in the Appellate Court, $150; also the amount paid for printing briefs in the Appellate Court, $27; and taxed costs in this court, $18.20; also the sheriff's costs on the writ of assistance, $25.50.

It was the contention of the defendants in error on the trial that no recovery could be had on the bond for the use and occupation, or rental value, of the premises during the pendency of the appeal, because said use, occupation and rental value is not specifically mentioned in the bond; in other words, the contention of the defendants below is that under the condition of the bond the word "damages" means costs, and the condition is to pay the costs only,—thus the question arises as to the construction of the condition of the bond.

While the language used in the bond is general, it must be presumed that it was intended to have some real effect and to give plaintiff in error some security for the damages resulting from the delay attending upon a fruitless appeal, if the appeal described in the bond should be without avail. The whole bond and every word and phrase therein, together with the circumstances surrounding the parties at the time it was given, should be looked to for the purpose of determining what the contract is and what the real intention of the parties was, taking the terms of the bond in their plain, ordinary and popular sense. One of the parties to the bond being a surety, his liability must undoubtedly be determined in accordance with the rules of law applicable to a surety. A rule universally recognized by the courts is that a surety has a right to stand upon the strict terms of his obligation, and that his liability is not to be extended by implication

beyond the terms of the contract.    In *Shreffler v. Nadelhoffer,* 133 Ill. 536, there was before the court an appeal bond, the construction of which was involved. The court in its opinion, after referring to the strict construction of a contract of a surety and the holdings of the Supreme Court with reference thereto, states that it has long been the settled law of this State that the contract of a surety is to be strictly construed, and that his liability is not to be extended by implication. The court, however, proceeds to say:

"It is not meant by this rule, however, that the courts, in endeavoring to ascertain the precise terms of the contract actually made by a surety, may not resort to the same aids, and invoke the same canons of interpretation which apply in case of other contracts.   Thus in *Stull v. Hance,* 62 Ill. 52, the rule that in construing contracts and written agreements, the whole context should be considered, and the intention of the parties ascertained from it, was applied to the interpretation of the contract of a surety; and in *Mix v. Singleton,* 86 id. 194, where a similar contract was under consideration, the rule that the words used should be construed as ordinarily understood was applied."

The court quotes with approval from *Kastner v. Winsterley,* 20 Up. Can. C. P. 101, where various English authorities were reviewed, the following:

"The rule of construction, then, of a contract of this description, is, to construe it as all other contracts, not giving a strict meaning to the words used against the party using them, nor yet as against the party in whose favor they are used, but to collect the real intention of the parties from the terms used in the contract, taking them in their plain, ordinary and popular sense, unless by the known usage of the trade they have acquired a peculiar sense, and from the surrounding circumstances."

After reviewing the authorities in other jurisdictions, the court, in the *Shreffler* case, *supra,* recognizes that the condition of the bond before it, when read by itself and without reference to surrounding circum-

stances, is of doubtful meaning, which, the court thinks, was the result of the effort of the draftsman in preparing the bond to combine the provisions of an injunction bond and an appeal bond, and that either of two different readings of the bond might be adopted without doing violence to any of the language of the condition. Nevertheless, the court proceeds to hold that when it viewed the condition of the bond in the light of surrounding circumstances, there could be no reasonable doubt as to which of the meanings was within the purpose and intent of the parties, and the court gave the bond before it the construction which would give effect to the purpose and intent of the parties, taking into consideration the circumstances under which the appeal was taken and the bond was given, and what must have been the purpose of the court in requiring a bond and the purpose in giving it, and held that the language, though general, was sufficiently definite to require the obligors on the bond to pay the damages that the obligee on the bond might suffer from the continuance of the injunction.

Under the doctrine of the *Shreffler* case, *supra,* and the authorities cited therein, we are of the opinion that the bond in the case at bar was intended by the parties, and must be construed, to cover the damages which the plaintiff in error might suffer by reason of being deprived of the possession of the premises in question during the pendency of the appeal, and that the court below erred in excluding the rents and profits of the premises withheld by the obligors on the bond during the time of the pendency of the appeal.

No question is made in the briefs and arguments of the parties but that the rental value of the premises withheld is the correct measure of damages. Plaintiff in error was held to be entitled to immediate possession of the premises, and that possession being withheld, he suffered the loss of the rents and profits thereof. In other jurisdictions it has been frequently held that under a bond, such as the one before us, the rental value of the premises may be recovered in a

suit on the bond as "damages rendered or to be rendered." *St. Louis S. & R. Co. v. Wyman,* 22 Fed. 184; *Stults v. Zahn,* 117 Ind. 297; *Green v. Sternberg,* 15 Mo. App. 32.

We do not construe the bond, however, as covering the cost of printing the plaintiff in error's briefs in this court or the amount claimed by plaintiff in error for counsel fees in this court on the appeal. The bond does cover the court costs in this court on the appeal and the sheriff's fees for the execution of the *alias* writ of assistance. In our opinion, the plaintiff below, plaintiff in error here, was entitled to recover the stipulated fair rental value of the premises from March 30, 1909, to March 18, 1912, which amounted to $534, and the costs above named, $43.70, making in all $577.70, together with interest thereon from December 21, 1912, at five per cent., amounting in all to $612.70. The judgment below is reversed and judgment is entered here for the amount above named, $612.70.

*Reversed and judgment here.*